EDWARD H. GUYER

*v.*

EDWIN E. WARREN *et al.*

*Opinion filed October 24, 1898.*

1. SPECIFIC PERFORMANCE—*optional contracts to convey land may be specifically enforced.* An optional agreement to convey land, without any corresponding obligation or covenant to purchase, will be specifically enforced in equity, if made upon sufficient consideration.

2. CONTRACTS—*optional contract becomes mutual when proposed vendee signifies his acceptance.* An optional contract to convey land becomes mutual, and capable of enforcement at the instance of either party, when the proposed vendee signifies his acceptance within the time limited and upon the terms stated in the contract.

3. SAME—*provision for giving seven days' notice of election construed.* An optional contract to convey land on or before a designated date, and which provides that the party having the option shall give the vendors "seven days' notice in writing, at any time before the expiration of this option," of his election to complete the pur-

chase, does not require that such notice be given seven days prior to the expiration of the option.

4. SAME—*when description of land is sufficiently certain.* A contract signed and sealed by the vendors, describing the land as "our farm in LeClaire's reserve, Rock Island county, and consisting of" a designated number of acres, is sufficiently certain in description, where, in another clause of the contract, the vendors waive and release "all right of homestead in said property reserved  *  *  * by the laws of the State of Illinois."

APPEAL from the Circuit Court of Rock Island county; the Hon. HIRAM BIGELOW, Judge, presiding.

This is a bill for specific performance, filed on June 5, 1896, by the appellant against the appellees, Edwin E. Warren and Rilla Warren. The contract, whose performance the bill seeks to enforce, was dated February 14, 1895, and signed by the appellees under their respective seals, and was by them acknowledged before a notary public on the day of its date. The contract is as follows:

"In consideration of one dollar to us in hand paid by R. R. Bemis, the receipt and sufficiency whereof is hereby acknowledged, the undersigned do hereby grant to said Bemis, his representatives or assigns, the option of purchasing, on or before May 1 next, our farm in Le-Claire's reserve, Rock Island county, and consisting of eighty-three and 31-100 acres, more or less, for the price of $100.00 per acre, payment whereof is to be made as follows, viz.: One-fourth cash in hand at the time of the delivery of deed, and the balance on or before five years after the date of said deed, and secured by mortgage on said property. Said mortgage shall contain a provision for partial releases upon the payment on the total indebtedness of $200.00 per acre for each acre for which release is demanded. Said mortgage shall bear six per cent interest. On payment of $50.00 on or before May 1 next, the option shall be extended until May 1, A. D. 1896. On receipt of seven days' notice in writing, at any time before the expiration of this option, of the election of the

said Bemis to complete said purchase, the undersigned agree to execute a warranty deed for said land, and convey thereby a clear title for said land, free from all encumbrances except those above stated. In case this option is exercised while any crops stand on the land, the said crop shall be reserved to the undersigned, with the right to cultivate them and occupy buildings till harvest; but the purchaser may elect to take the crop on any particular field, and pay therefor the value thereof, to be fixed by arbitration in the usual way, in which case the purchaser shall have immediate possession of said field. In the case of purchase, the money paid for the option shall be considered as a part of the cash purchase money. We do hereby further waive and release all right of homestead in said property reserved to us by laws of the State of Illinois, and we do agree that the deed above provided for shall contain the usual homestead waiver and release."

On April 16, 1895, there was endorsed upon the contract a receipt, signed by the appellee, Edwin E. Warren, in which he acknowledges the receipt from R. R. Bemis of the sum of $50.00, "being the sum mentioned in the foregoing option contract for its extension to May 1, A. D. 1896." On May 5, 1895, there was endorsed upon the contract an instrument of assignment, signed by R. R. Bemis under his seal, which is as follows: "In consideration of the sum of one dollar to me in hand paid, the receipt of which is hereby acknowledged, I hereby assign the within option contract to E. H. Guyer, his heirs, successors or assigns, this 5th day of May, A. D. 1895." On April 30, 1896, Edward H. Guyer gave the appellees seven days' notice in writing to furnish abstract of title, and to execute a warranty deed for the premises described in the bill of complaint and in said contract.

The bill describes in substance the contract, and the endorsements thereon, and the notice above set forth, and refers to them as exhibits thereto. The bill further represents, that, since April 30, 1896, and on May 5, 1896,

Edward H. Guyer applied to the appellee, Edwin E. Warren, and offered to pay him the sum of $2033.00, being the amount of the first installment, due by the terms of the contract, and also offered to deliver to him the mortgage and notes therein provided for, which mortgage and notes were executed by A. L. Carson, the person named as grantee in the said notice. The bill also alleges, that Edwin E. Warren refused to comply with the agreement; that on May 6, 1896, appellant applied to the appellees, and tendered to them the said sum of $2033.00, and said mortgage and notes, and offered to deliver the same upon the delivery of a good and sufficient warranty deed for said premises; and that the appellees refused to comply with the agreement on their part. The bill was subsequently amended by alleging that, on April 30, 1896, appellant informed the appellees that he would take the property on that day, and demanded a deed, and offered to pay the money and to make the notes and a mortgage, but that the appellees refused to make said deed and repudiated the contract. The amendment to the bill further alleged, that, in case the appellees were not satisfied with the mortgage and notes of said Carson, appellant offered to deliver to them a mortgage and notes executed by himself on receiving a sufficient warranty deed; but that said Edwin E. Warren refused said offer, on the ground that the time limited in said agreement had expired.

The amendment further alleged that, when said contract was entered into, the land in question was used solely for farming purposes; that in the vicinity appellant and others had recently laid out East Moline with a view of inducing manufacturing establishments to locate there and founding a manufacturing community to give employment to mechanics and laborers; that this necessitated the purchase of large tracts of land; that much of the land needed was secured by like agreements to that above specified; and that, for said purposes, manufacturing and other buildings have been erected at a cost of $50,000.00,

and that the premises described in the bill are a part of the land embraced within the bounds of said East Moline, and are needed for manufacturing lots.

The bill, as originally filed, and as subsequently amended, was demurred to. The demurrer was sustained, and the bill was dismissed for want of equity. The present appeal is prosecuted from such decree of dismissal.

W. R. MOORE, for appellant:

A written agreement to convey land, at the option of the proposed vendee, within a given time and at a certain price, if made upon a sufficient consideration, where the party extending the option is bound and the other party is not, will be enforced in equity at the instance of the proposed vendee. *Johnson* v. *Trippe*, 33 Fed. Rep. 530; *Waterman* v. *Waterman*, 27 id. 827; *Watts* v. *Kellar*, 56 id. 1; *Willard* v. *Tayloe*, 8 Wall. 557; *Butler* v. *Thompson*, 92 U. S. 412; *Secomb* v. *Steel*, 20 How. 94; *Cheney* v. *Libby*, 134 U. S. 68; *Perkins* v. *Hadsell*, 50 Ill. 216; *Estes* v. *Furlong*, 59 id. 298; *Hayes* v. *O'Brien*, 149 id. 403; *Brown* v. *Slee*, 103 U. S. 828; *Litsey* v. *Whittemore*, 111 Ill. 267; *Watson* v. *White*, 152 id. 364; *Towel* v. *Freeman*, 9 Ves. 351; *Glason* v. *Bailey*, 14 Johns. 484; *In re Hunter*, 1 Edw. Ch. 1; *Howralty* v. *Warren*, 18 N. J. Eq. 124; *Pettibone* v. *Moore*, 75 Hun, 461; *Houghwout* v. *Boisaubin*, 18 N. J. Eq. 318; *Flue* v. *Houghton*, 6 Col. 318; *Cheney* v. *Cook*, 7 Wis. 413; *Herman* v. *Babcock*, 103 Ind. 461; *Green* v. *Richards*, 23 N. J. Eq. 32; *Lynn* v. *McLain*, 80 Ala. 360; Fry on Specific Per. 200; *Farwell* v. *Lowther*, 18 Ill. 252; *Moses* v. *McClain*, 82 Ala. 370; *Chambers* v. *Iron Co.* 67 id. 353; *Johnson* v. *Dodge*, 17 Ill. 433.

An option on real estate, if accepted and acted upon before it has been withdrawn, may be enforced as a valid contract to convey, even though without consideration. *Claanchini* v. *Branstatter*, 84 Cal. 49; *Perkins* v. *Hadsell*, 50 Ill. 216; *Railroad Co.* v. *Barkins*, 3 Cush. 224; *Bell* v. *Boston*, 101 Mass. 510; *Sofonffran* v. *McDonald*, 27 Ind. 269; *Sylvester* v. *Bourn*, 32 Pa. St. 467; *Pyers* v. *Railroad Co.* 13 Col. 552.

It must affirmatively appear that the parties regard time or place as an essential element in their agreement or a court of equity will not so regard it, as in equity time is not of the essence of the contract. Time is not of the essence of the contract unless made so by the parties themselves. *Secomb* v. *Steel,* 20 How. 94; *Cheney* v. *Libby,* 134 U. S. 68; *Hepburn* v. *Auld,* 5 Cranch, 262; *Steel* v. *Biggs,* 22 Ill. 643; *Stow* v. *Russell,* 36 id. 18; *Morgan* v. *Herrick,* 21 id. 481; *Lowery* y. *Niccolls,* 11 Ill. App. 450; 22 Am. & Eng. Ency. of Law, 1055.

It is the province of the court to put a construction upon a written contract or agreement of parties according to the established use of the language as applied to the subject matter and modified by the whole instrument or by the existing terms. *Heaton* v. *Smith,* 20 Pick. 150; *Burnham* v. *Allen,* 1 Gray, 496; *Railroad Co.* v. *Jurey,* 111 U. S. 584; *Pensacola* v. *Lotes,* 2 So. Rep. 609; *Railroad Co.* v. *Railway Co.* 44 Ohio St. 287; *Bent* v. *Alexander,* 15 Mo. App. 181.

AMBROSE P. McGUIRK, and JOHN T. KENWORTHY, for appellees:

An application for the specific performance of a contract is always addressed to the sound legal discretion of the court, and courts of equity will only decree a specific performance where the contract is in writing and is certain, and is fair in all its parts, and is for an adequate consideration, and is capable of being performed. *Bowman* v. *Cunningham,* 78 Ill. 48; *Winter* v. *Trainor,* 151 id. 194; *Hamilton* v. *Harvey,* 121 id. 469; Story's Eq. Jur. sec. 741.

A contract, to be specifically enforced by the court, must be mutual,—that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other. Fry on Specific Per. chap. 8, sec. 286.

Courts of equity will decree a specific performance where the contract is in writing and is certain, and is

fair in all its parts, and is for an adequate consideration, and is capable of being performed, but not otherwise. The obligation must be mutual, and unless the contract binds all the parties it will not be specifically enforced against any of them. *Winter* v. *Trainor*, 151 Ill. 191.

The contract, in itself, must be so certain as to description that from the contract alone it can be definitely located. *Hamilton* v. *Harvey*, 121 Ill. 469.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The first objection made to the bill is, that the contract, which it seeks to specifically perform, lacks mutuality of obligation. The contention is that, by the terms of the contract, there is no obligation on the part of Bemis, or his assignee, the appellant, to buy the land, and that Warren and his wife cannot compel Bemis or his assignee to purchase the land. In other words, it is claimed that Bemis did not purchase the land or any interest therein, but merely secured the right to an option to purchase in the future.

It was formerly held with some degree of strictness that the want of mutuality would render a contract for the sale of land incapable of specific enforcement. But the doctrine of the earlier cases upon this subject has been considerably modified. There are well established exceptions to the doctrine of mutuality. It is not necessary here to specify all these exceptions. It is sufficient to say, that, under the later decisions of the courts, optional agreements to convey without any corresponding obligation or covenant to purchase will be specifically enforced in equity, if made upon sufficient and valuable consideration. "A written agreement to convey land at the option of the proposed vendee within a given time and at a certain price, if made upon a sufficient consideration with full knowledge on the part of the person extending the option that he is bound and the other is

not, is such a contract as, though lacking mutuality of
remedy, will be enforced in equity at the instance of the
proposed vendee.   Where the party holding an option
signifies his acceptance within the time limited, and upon
the terms stated, the obligation of the contract becomes
mutual and capable of enforcement at the instance of
either party." (*Johnston* v. *Trippe*, 33 Fed. Rep. 530; *Watts*
v. *Kellar*, 56 id. 1; *Waterman* v. *Waterman*, 27 id. 827; *Willard*
v. *Tayloe*, 8 Wall. 557; *Brown* v. *Slee*, 103 U. S. 828; *Estes* v.
*Furlong*, 59 Ill. 298; *Perkins* v. *Hadsell*, 50 id. 216; *Hayes* v.
*O'Brien*, 149 id. 403; *Smith & Fleek's Appeal*, 69 Pa. St. 474;
*Houghwout* v. *Boisaubin*, 18 N. J. Eq. 318; *Hawralty* v. *War-
ren*, 18 id. 124; *Schroeder* v. *Franklin*, 10 Nev. 255).

In *Estes* v. *Furlong*, *supra*, it was held, that a unilateral
contract, as an option to purchase, will not be regarded
as invalid; and it was there said: "A party who has
not signed an agreement relating to land may enforce
it against one who has signed it, although he could not
himself have been compelled to execute it." A unilateral
contract of this kind, in which one party confers an op-
tion upon the other, is in reality a conditional agreement;
and, upon the happening of the condition, that is to say,
when the option given is declared or the election pro-
vided for is made, the agreement becomes absolute and
the obligations of the parties become mutual. (Pomeroy
on Contracts, sec. 169).

We are of the opinion, that the case at bar does not
come within the class of cases where lack of mutuality
will prevent the enforcement of the contract.   The rule
requiring mutuality has no application to an option con-
tract like the one here under consideration.   There is here
an optional sale upon a fair consideration.   The consid-
eration named in the written agreement is one dollar.   As
the parties agree to sell an option to buy for the sum of
one dollar, there is no reason why such an express con-
sideration is not an adequate one. (*Waterman* v. *Waterman*,
*supra*).   Again, when the option was extended to May 1,

1896, $50.00 was paid in cash to the appellees for such extension, and was received by the appellees. By the terms of the contract these $50.00 became a part of the purchase money when the vendee in the contract exercised his election to buy. When the notice was given of such election on April 30, 1896, the instrument became *eo instanti* a contract of purchase mutually binding on both parties. The contract was also definite in its terms as to the amount to be paid for the land. In case of an election to purchase under the option mentioned in the contract, Bemis or his assigns were to pay for the 83.31 acres $100.00 per acre, one-fourth in cash upon the delivery of the deed, and the balance on or before five years after the date of the deed, such balance being secured by mortgage on the property. We see no reason why the sum of $50.00 was not an ample consideration for the right of the option to purchase the farm at the agreed price per acre. "Where one holding a buyer's option makes his election to purchase and tenders the amount agreed to according to the terms of the contract, it is the duty of the seller to accept the price and execute a deed to the purchaser for the property. * * * Such contracts are perfectly valid and it is now well settled that a court of equity may decree a specific performance of them." (*Watts* v. *Kellar, supra*). The covenant in the present contract, giving an option to purchase, was in the nature of a continuing offer to sell. It was made under seal, and hence must be regarded as having been made upon a sufficient consideration. When the offer to sell was accepted by the appellant by his notice to the appellees, the contract of sale between the parties was completed; and the appellees were not at liberty to recede from it. Our conclusion is, that the bill was not demurrable by reason of the optional feature of the contract sought to be enforced.

The next ground, upon which the bill is claimed to be demurrable is based upon the following provision in the contract, to-wit: "On receipt of seven days' notice in

writing at any time before the expiration of this option of the election of said Bemis to complete said purchase, the undersigned agree to execute a warranty deed for said land, and convey thereby a clear title for said land, free from all encumbrances except those above stated." Counsel for appellees claim, that the last of the seven days' notice should have expired on April 30, 1896, while counsel for appellant contend, that the notice could be given at any time before the expiration of the year, or before the expiration of the last day of the year, which the agreement had to run; this was all day of May 1, 1896. It is conceded, that the notice of the election to complete the purchase was not given until April 30, 1896. In interpreting contracts courts will look to the entire instrument, and give a meaning to each clause of the contract. Such construction will be adopted, if possible, as will render the whole contract operative. (*Hayes* v. *O'Brien*, *supra*). Here, Bemis, his representatives or assigns had until May 1, 1895, to exercise their election as to the purchase of the property. When the sum of $50.00 was paid, the option was extended until May 1, 1896. After the extension, Bemis and his representatives or assigns had the whole period up to May 1, 1896, for the exercise of the election provided for. The clause in question must be construed with reference to this provision of the contract, which extended the time for the full period, expiring on May 1, 1896. If the vendee in the contract was, obliged to give the notice of his election seven days before May 1, 1896, then he would not have the full period, expiring on May 1, 1896, for the exercise of his option, but would have a period seven days less than that provided for in the earlier part of the contract. Such a construction as this would make the separate provisions of the contract contradictory of each other. The provision in regard to the seven days' notice was evidently inserted for the benefit of the appellees, the vendors in the contract. Its object was to give the vendors notice of the

buyer's intention, so that the vendors could have time
to prepare the deed. The meaning of the disputed clause
is, that, if, at any time before the option expired, Bemis
should elect to complete the purchase, the appellees
should have seven days, after the receipt of a notice in
writing of such election, to prepare and execute a war-
ranty deed. Whenever, before the expiration of the
option, Bemis elected to complete the purchase of the
premises, he was to give seven days' notice in writing to
the appellees of his election, and such notice was to bear
date on or before the first day of May, 1896; and, before
the expiration of said seven days, appellees agreed to
execute a warranty deed. It could not have been intended
that Bemis, or the appellant, should give the notice pro-
vided for seven days before the expiration of the option.
The seven days' notice had nothing to do with the option.
The giving of a notice was the method of exercising the
option, and the day of giving the notice was the time of
exercising the option. A conveyance was necessary only
in the event that the option to purchase was exercised
by the grantee. And the time during which this option
could be exercised was to last until May 1, 1896. To so
construe the clause in question as to make the option
extend only until April 23 or 24, 1896, would be directly
contrary to the express language of the contract.

We are, therefore, of the opinion that the bill was not
demurrable upon the ground, that it did not show the
giving of the notice of election to purchase seven days
before the expiration of the period, during which the ven-
dee in the contract had the right to exercise his option.

It is said, that a specific performance of the con-
tract should not be enforced upon the alleged ground,
that there is no proper description of the premises. The
premises are thus described in the contract: "Our farm
in LeClaire's reserve, Rock Island county, and consist-
ing of eighty-three and 31-100 acres, more or less." A
deed or other written contract is not void for uncertainty

in a description of the land sold or conveyed if, from the words employed, the description can be made certain by extraneous evidence of physical conditions, measurements or monuments referred to in the deed. (*Hayes* v. *O'Brien, supra*). The word "our" indicates that the farm referred to was a farm owned by the vendors in the contract. The balance of the description showed that the farm was located in LeClaire's reserve in Rock Island county. It can be shown with certainty what lands the appellees owned within the reserve and county named. The maxim is *id certum est quod certum reddi potest*. In *King* v. *Ruckman*, 20 N. J. Eq. 316; Ruckman, by written contract, agreed to sell King certain tracts of land in Rockland county, New York, describing them as all the lands he owned and held contracts for in the township of Harrington; and the court there held that the description was sufficiently certain. (*Hamilton* v. *Harvey*, 121 Ill. 469). It is said, however, that the name of the State, in which the land is located, is not given in the description, and that for this reason the description is indefinite. The last clause of the contract provides for a waiver and release of "all right of homestead in said property reserved to us by laws of the State of Illinois." We think that this reference to the State of Illinois is a sufficient indication of the fact that Rock Island county, where the land was located, was in the State of Illinois. We do not regard the bill as subject to demurrer on account of any indefiniteness in the description of the premises referred to in the contract.

The decree of the circuit court, dismissing the bill, is reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views expressed herein.                *Reversed and remanded.*