E. E. LAUGHNER *et al.* Appellants, *vs.* A. R. SMITH, Appellee.

*Opinion filed February 20, 1908.*

SPECIFIC PERFORMANCE—*party having option on land for speculative purposes must act promptly.* Parties having an option to buy land "upon the completion" of an oil well being sunk by them on adjacent land, and who accept the option as soon as the test well has begun to flow freely, must complete their contract within the time fixed therein. or within such additional time as is extended by the land owner, and they cannot delay until oil has been found upon such land by other parties and then enforce the contract, upon the theory that the test well was not "completed," so as to require them to act on the option, until it was connected with a tank and pipe line.

DUNN, J., dissenting.

APPEAL from the Circuit Court of Crawford county; the Hon. J. R. CREIGHTON, Judge, presiding.

H. G. MORRIS, for appellants.

CALLAHAN, JONES & LOWE, for appellee.

·  Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by E. E. Laughner and W. L. Long, the appellants, against A. R. Smith, the appellee, in the circuit court of Crawford county, to enforce the specific performance of an option contract in writing, whereby Smith agreed to convey to Laughner and Long a tract of land situated in Crawford county containing 120 acres, upon which Smith and his family lived as their home, for the consideration of $10,000, if said Laughner and Long desired to purchase said farm after the completion of a well then being drilled for oil on an adjoining tract of land belonging to one Harry Martin. An answer and replication were filed and the case was tried in open court, and a decree was entered dismissing the bill for want of equity, and Laughner and Long have prosecuted an appeal to this court.

It appears from the pleadings, evidence and decree that on the 17th day of April, 1906, the appellee, A. R. Smith, was the owner of a 120-acre tract of land situated in Crawford county, upon which he and his family resided as their home; that said land had been purchased by Smith in the year 1904 for $3600, and that he owned the same in fee, subject to a purchase money mortgage thereon for $2600; that in the month of April, 1906, Laughner and Long were engaged in drilling for oil upon an adjoining 40-acre tract of land belonging to Harry Martin; that on April 17, 1906, they made an option contract with Smith to purchase his farm for the sum of $10,000 upon the completion of the well then being drilled on the Martin land if upon completion of said well they desired to purchase said farm, and that in case they purchased said farm they should have ten days after the completion of the well in which to examine the title to said farm and to pay the money therefor; that on May 2, 1906, oil was struck upon the Martin land in the well referred to in the option contract between Laughner and Long and Smith, which well flowed from twenty-five

to thirty-five barrels per day; that on the morning of the third of May, Smith went to Laughner and asked him what he and Long proposed to do about taking his farm under said option contract, and Laughner stated to him they would take it and that he had directed his attorneys to examine the title to said land; that on the 11th day of May, Smith met Laughner and inquired when they would close up the deal, and that Laughner suggested to him that they close it up in Robinson on the 15th; that Smith, not having heard from Laughner, on the 16th of May went to Robinson, in company with his brother, and called on Laughner; that he then told him that he had his share of the money but that Long had gone east to get his, and that he would not be back before the 18th, when he would notify him; that Smith then stated to him that the deal must be closed up that week, if at all, and not later than the 19th, which was on Saturday, and Smith and his brother went away with the understanding that Laughner was to notify him what day during that week to come in and close the deal; that Smith saw nothing or heard nothing from Laughner or Long until the 6th of June, when he met Laughner near the land, and he then stated to Laughner that the option had run out, and Laughner stated to him that they would have no trouble over the option; that on the 7th of June, Laughner, in company with an attorney, went to the home of Smith and tendered him $7260, the claimed difference between the $10,000 which was to be paid for the land and the purchase money mortgage thereon given by Smith, and demanded a warranty deed for the premises from Smith, signed by his wife; that Smith declined to make a deed on the ground, among others, that the option which Laughner and Long had upon his farm had expired by limitation of time; that between the 19th day of May and the 7th day of June a well had been put down upon appellee's land which was flowing four hundred barrels of oil per day, and the land was much more valuable on the 7th of June than

at the time said option contract was executed, or on the 19th day of May, 1906.

The evidence is conflicting and a great deal of the evidence was introduced to establish the meaning of the expression, "upon the completion of the well," found in the contract. The case was tried in open court and the chancellor saw the witnesses and heard them testify, and whether the expression, "upon the completion of the well," found in the contract, meant a well which was producing oil in paying quantities, as claimed by appellee, or a well which was fully developed and connected with a tank and pipe line, as claimed by the appellants, we think the parties, as shown by the testimony of the appellee and his witnesses, to which the court seems to have given credence, construed the contract to mean a well in the condition the well upon the Martin land was in on the morning of the 3d of May, 1906, and on that day the appellants agreed to take the land of appellee and ordered an abstract of the title to said land prepared. The contract was an option contract, and was not binding upon Laughner and Long until they accepted its terms and agreed to take the farm of the appellee, when it was binding on them. (*Guyer* v. *Warren,* 175 Ill. 328; *Carter* v. *Love,* 206 id. 310; *Seyferth* v. *Groves and Sand Ridge Railroad Co.* 217 id. 483.) The appellants having, therefore, on the morning of the 3d of May, 1906, accepted the terms of the contract and agreed to take the land, they were bound to close the deal within ten days from that date. On the 11th day of May, and again on the 16th of May, the time in which the contract provided the title should be examined and the purchase money paid was extended, but at no time was it extended later than until May 19, 1906, and the contract not having been consummated on that day by the payment of the purchase price and the acceptance of a deed, we think the appellants could not put themselves in a position on the 7th day of June, 1906, whereby they would be entitled to the specific performance

of said option contract. Especially must this be true as the evidence shows between the 19th of May and the 7th of June, 1906, an oil well had been brought in on said farm which was flowing four hundred barrels of oil per day and which greatly increased the value of the farm. The value of appellee's farm for oil purposes was largely speculative, and if the appellants desired to accept the option they held thereon they should have acted promptly. The land was subject to an oil lease, which the option contract provided should not be an encumbrance, under which the lessees were prospecting on the farm for oil. The option was that the appellants should determine whether they would take the farm so soon as the well was completed on the Martin land, and when oil was found on the Martin land they stated to Smith they would take his land, but under one pretext and another they held him off and did not close the deal until after the option which they held on appellee's land had expired. Afterwards, and after the well had been brought in on appellee's farm and it had proved very valuable, they sought to enforce their option on the ground that the well upon the Martin land was not completed on the third day of May, when they stated to appellee that they would take his land. It would be inequitable to permit the appellants to thus delay closing their option contract until a well was drilled upon appellee's land, and in case no oil was found to then refuse to take his land. The appellants agreed to exercise their option upon the completion of the well upon the Martin land and not upon the completion of the well upon appellee's land, and as they allowed their option to expire they could not afterwards renew it by making a tender on the 7th of June. If the testimony of the appellee and that of his witnesses is to be believed, then clearly the court did not err in dismissing the bill for want of equity.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

Mr. JUSTICE DUNN, dissenting.