**In re Estate of Carl H. Weil, Deceased.**
**Morris Paper Mills, Appellee, v. Rena Weil, Executrix under Last Will and Testament of Carl H. Weil, Deceased, Appellant.**

.Gen. No. 39,038.

Heard in the third division of this court for the first district at the October term, 1936. Opinion filed June 30, 1937.

LEDERER, LIVINGSTON, KAHN, ADLER & ADSIT, of Chicago, for appellant; SIGMOND LIVINGSTON, of counsel.

TAYLOR, MILLER, BUSCH & BOYDEN, of Chicago, for appellee; PRESTON BOYDEN, CASSIUS M. DOTY and CHARLES R. SPROWL, all of Chicago, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Cook county, allowing the claim of Morris Paper Mills against the estate of Carl H. Weil for the sum of $24,281.13. The judgment is dated June 24, 1935. The claim was originally filed in the probate court, where it was allowed, and the matter was heard in the circuit court on appeal from the probate court. The action is predicated upon the following instrument:

"Chicago, Ill. July 11, 1929.

"Morris Paper Mills,
Morris, Illinois.

"Attention: Mr. Foreman N. Leopold.

"My dear Mr. Leopold:

"We understand that you are purchasing from Chas. H. Roach Company of Chicago, an Illinois partnership, the following securities at the price mentioned herein:

$10,000—City of Chicago Improvement Bonds, issued under warrant # 53658, dated June 7th, 1929, due December 31st, 1931, @ $99.00 plus accrued interest.

$10,000—City of Chicago Improvement Bonds, issued under warrant # 53658, dated June 7th, 1929, due December 31, 1932, @ $99.00 plus accrued interest.

"In connection we appreciate the fact that you may at some future date choose to sell all, or any part of above mentioned bonds. If at that time Chas. H. Roach Company will not purchase from you any of the above bonds at price satisfactory to you, then we as individuals do hereby agree that upon sixty days' notice,

given in writing, we will purchase from you any or all of the bonds at the original price paid for same—namely: $99.00 plus accrued interest.

"Yours very truly,
"Carl H. Weil,
Charles H. Roach.

"Charles H. Roach Co.
By Charles H. Roach."

It is conceded that the bonds referred to were local improvement bonds, that they were purchased and paid for by the claimant, Morris Paper Mills, and that the instrument referred to was delivered to claimant contemporaneously with the purchase of the bonds. The record indicates that the firm of Charles H. Roach & Company was dissolved in the month of January, 1931; that Charles H. Roach died on June 14, 1933, and Carl H. Weil died November 8, 1933, and that letters testamentary were issued in the estate of Carl H. Weil on December 27, 1933. The first $10,000 of city of Chicago improvement bonds mentioned in the instrument, matured December 31, 1931, and the other $10,000 of the bonds so purchased, matured December 31, 1932. It is in evidence, and not disputed, that in the year 1933, the city of Chicago collected on these bonds and paid over to plaintiff, the sum of $300 in principal and $50 in interest, that this amount is all that the city of Chicago ever collected from the special assessments levied for their payment, and all that claimant ever received thereon.

In the trial in the circuit court, claimant produced a witness named Joseph Weil, a brother of the Carl H. Weil who signed the contract and who is now deceased. Joseph Weil testified that during the lifetime of Carl H. Weil, the witness was in the investment business with him; that in the year 1933, his brother had told him, the witness, that he had a conference with Mr. Leopold of the Morris Paper Mills, and that Leopold told Carl H. Weil that he, Leopold, wanted to know

whether Carl H. Weil would pay some money on account of the bonds in question, and that his brother told him that his reply to Leopold was that he could not afford to pay.

On June 4, 1934, the following letter was sent by the claimant to Rena K. Weil, executrix under the last will and testament of the estate of Carl H. Weil, as Mrs. Carl H. Weil:

"June 4, 1934.

"Mrs. Carl H. Weil,

"We are writing you with regard to a matter of somewhat long standing between our company and Mr. Carl Weil, which matter is of some importance to us, and which we would like very much to have cleaned up if possible.

"Under date of July 11, 1929, our company purchased twenty thousand ($20,000.00) worth of bonds from the Charles R. Roach Company of which Mr. Weil at that time was a partner, and the purchase was made contingent upon a guarantee which Mr. Weil signed, and a photostat copy of which I am attaching hereto.

"In May, 1933, after some correspondence, and 'phone conversations, Mr. Weil attended a meeting in our office, at which time he stated that he recognized fully the liability that existed under this guarantee and that it was his wish that the matter be taken care of promptly, but at that time it was not particularly convenient on account of conditions as they existed in the spring a year ago, and asked that we permit him four or five months longer to make good this guarantee, which we of course consented to do. Unfortunately, the passing of Mr. Weil precluded any action in this connection, and we subsequently had the matter up with Mr. Kuhn. However, before we could get the matter disposed of, Mr. Kuhn was taken sick with the result that as yet nothing has been done in this connection.

"We know definitely that it was the wish of Mr. Carl Weil that this matter be given attention at the

earliest possible time, the whole transaction having been in good faith on both sides, and while we dislike to press the matter, still we feel obligated to write you at this time inasmuch as the matter is now nearly two years old, and we feel justified in asking that some action be taken promptly.

"Morris Paper Mills,
Foreman N. Leopold,
President."

In reply to this letter, the claimant received the following:

"Chicago, Illinois June 6, 1934.
"Mr. Foreman N. Leopold,
Morris Paper Mills

"I have your letter of June 4th, and note the photostatic copy of the contract which you attached to your letter.

"I am aware of the situation, but due to the fact that both my husband and my father's estate are still in probate, it is impossible for me to do anything about this matter at the present time.

Rena K. Weil."

Thereafter, and on June 13, 1934, plaintiff sent and defendant received the following:

"Chicago, Illinois, June 13, 1934.
"Mrs. Rena K. Weil,
Executrix, Estate of Carl H. Weil,
1725 East 55th Street,
Chicago, Illinois.
"Dear Madam:

"Under date of July 11, 1929, Carl H. Weil, of whose estate you are executrix, and Charles H. Roach, entered into an agreement and contract with the undersigned, Morris Paper Mills, regarding the purchase and sale of certain municipal bonds as therein provided. A copy of said agreement and contract is enclosed herewith.

"Morris Paper Mills hereby gives you notice, in writing, of its desire to have said bonds purchased as provided in said agreement and contract, and respectively requests and demands that you, as executrix of the estate of Carl H. Weil, purchase said bonds at the price and upon the terms set forth in said agreement and contract, on or before sixty (60) days after the giving of this written notice.

"The bonds described in said agreement and contract are held by the undersigned, and the undersigned is ready, willing and able to deliver the same to you upon payment by you of the purchase price stated in said agreement and contract, and hereby tenders said bonds to you, delivery thereof to be simultaneous with the payment of the purchase price.

"The condition set forth in said agreement and contract that said bonds be first offered to Charles H. Roach & Co. and that said firm shall refuse to purchase the same is avoided by the fact that said firm has been dissolved.

"This letter is being sent to you by registered mail. A similar letter is being sent simultaneously to Mrs. Lillian J. Roach, administratrix of the estate of Charles H. Roach.

> "Yours very truly,
> "Morris Paper Mills,
> By Foreman N. Leopold,
> President."

We here call particular attention to the following portion of a letter written by Carl H. Weil and Charles H. Roach to the plaintiff on July 11, 1929, upon which this action is predicated:

"In connection we appreciate the fact that you may at some future date choose to sell all, or any part of the above mentioned bonds. If at that time Charles H. Roach Company will not purchase from you any of the above bonds at price satisfactory to you, then we as

individuals do hereby agree that upon sixty days' notice, given in writing, we will purchase from you any or all of the above bonds at the original price paid for same—namely: $99.00 plus accrued interest.

"Yours very truly,

Carl H. Weil,

Charles H. Roach,

"Charles H. Roach & Co.

By Charles H. Roach."

Defendant's theory is that the instrument dated July 11, 1929, from Carl H. Weil and Charles H. Roach to the claimant company was merely an option in favor of the claimant, giving it the right to demand that Carl H. Weil and Charles H. Roach should purchase the bonds at the price designated in the instrument upon the terms there stated; that since the option contained no time limit for the exercise thereof, this omission might be supplied by the court and a reasonable time for the exercise thereof be fixed; that since plaintiff did not elect to exercise the option at or about the time of the maturity of the bonds, nor at or about the time of the default in interest payments thereon, nor during the lifetime of Carl H. Weil or Charles H. Roach, that notice to the defendant here was not an exercise of the option within a reasonable time, and was, therefore, not effective. Defendant also contends that no waiver of the condition that plaintiff exercise its option within a reasonable time was either alleged in the claim filed, nor proven on the trial of the cause, that if plaintiff is entitled to recover at all, that the proper measure of the recovery is not the purchase price of the bonds and interest from their maturity, but merely the difference between the fair market price of the bonds and the contract price, and that if recovery be had, it must be under section 64 of the Uniform Sales Act, Ill. State Bar Stats. 1935, ch. 121a, ¶ 67; Jones Ill. Stats. Ann. 121.68, and that no evidence

was offered as to whether the money for the payment of the bonds was available in the city treasury during the years 1934 and 1935, and that it was incumbent upon plaintiff to avail itself if such funds were on hand during these years in the city treasury of the city of Chicago for this purpose; also, that estates of deceased persons should not be burdened with the purchase of defaulted bonds, where the claimant, if he has any rights, can be made whole by establishing his damage, and that this claim can in no event be maintained in the probate court, but that if there is any liability it must be established in a suit at law against the executrix.

In *Morris Paper Mills v. Gatzert* (abstract opinion), 276 Ill. App. 595, it was shown that on January 27, 1928, this same plaintiff purchased from the Gatzert Company, which was engaged in the business of selling stocks and bonds, certain other municipal bonds and municipal securities. Also, that in that case, and simultaneously with the purchase of the bonds and securities, the defendants therein, Gatzert and Spiegel, in order to induce the plaintiff to purchase the bonds and securities, and in consideration of the purchase of the same, executed a written agreement to repurchase the bonds and securities. In that case, as in this case, and in almost the identical language, the Gatzert Company agreed in a writing dated January 27, 1928, that ''if at any time the Gatzert Company will not purchase from you [meaning plaintiff] any of the above bonds at prices satisfactory to you, then we, as individuals, do hereby agree that, upon sixty days' notice in writing, we will purchase from you any or all of the above bonds, upon the following basis: (Here follows the prices at which the defendant in that case agreed to repurchase the bonds.)'' In the complaint filed in that case, it was alleged that shortly before January 25, 1932, plaintiff had requested the Gatzert Company to repurchase the bonds at the price named. A motion to dismiss the plaintiff's claim was filed, and alleged,

in substance, that the facts stated in the statement of claim were not sufficient in law to give plaintiff the right to recover, and that the alleged agreement imposed no legal obligation upon the defendant to purchase the securities, but that the agreement was a mere independent voluntary offer on the part of the defendant to purchase the securities mentioned, that it was not supported by a legal consideration, and that the contract was unilateral. In that case, in holding that the plaintiffs had the right to recover, we cited the case of *Kincaid v. Overshiner*, 171 Ill. App. 37, wherein this court said:

"On September 15, 1905, defendants were promoting and selling stock of the Petersburg Telephone Company; Lee Kincaid purchased, at the solicitation of defendants, forty shares of the stock and paid the treasurer of the corporation $1,000, that being the par value of the forty shares.

"In order to induce Kincaid to buy this stock, the defendants signed the following agreement:

"'We, the undersigned, agree to purchase from Lee Kincaid at any time he should desire to sell to them his stock in the Petersburg Telephone Company, subscribed by him this day, at the price at which he pays for same, namely, $1,000 for forty shares.

"'Dated, this 15th day of September, 1905.

"'E. B. Overshiner,
John S. Hurie,
Henry S. Colby.'

"In the fore part of 1909, Kincaid became indebted to the Illinois National Bank of Springfield, beneficiary, plaintiff, and pledged this stock to it as security for that indebtedness. In May, 1910, Kincaid filed his petition in bankruptcy, and George E. Keys was appointed trustee of his estate.

"The evidence is conflicting as to whether Kincaid made a demand upon defendants to comply with their

agreement to purchase this stock before it was pledged as security, but we do not consider that question as material.

"On September 9, 1910, the following notice was mailed to defendants and duly received by them:

" 'Springfield, Ill. Sept. 9, 1910.

" 'Messrs. E. B. Overshiner, Jno. S. Hurie and Henry H. Colby:

" 'Gentlemen:—On September 15, 1905, you signed a written agreement, agreeing to purchase from Lee Kincaid, at any time he should so desire, the forty (40) shares of the capital stock of the Petersburg Telephone Company at the price which he paid for the same in reliance upon your agreement, namely, one thousand ($1,000) dollars.

" 'The undersigned, and each of them, have elected to sell said stock to you and to have you purchase the same at said price. You may obtain the stock by calling upon the undersigned, George E. Keys, Trustee, upon payment of the said purchase price of one thousand ($1,000) dollars.

" 'The undersigned, and each of them, will execute and deliver to you any and all transfers and assignments that may be necessary and proper to fully vest the title of stock in you.

" 'Kindly let this have your immediate attention, and oblige,

" 'Yours respectfully,
Lee Kincaid,
George E. Keys, Trustee of
the Estate of Lee Kincaid,
Bankrupt.
Illinois National Bank,
By H. M. Merriam, Cashier.

" 'Said bank holds said stock as collateral.' ''

In *Morris Paper Mills v. Gatzert, supra,* we stated that suit was instituted in the circuit court of Menard

county on this agreement, against Overshiner, Hurie and Colby, and that a judgment was entered against them for $1,037.50 and costs of suit, which judgment was affirmed by the Appellate Court, and we further stated that the Appellate Court, in *Kincaid v. Overshiner, supra,* made the following observation in its opinion as to the defense urged in that case:

" 'Defendants contend that the written agreement of September 15, 1905, was without consideration; that it is unilateral; that action thereon is barred by the five year statute of limitations; that the agreement was a personal one to Kincaid, and was not a matter of assignment, and no recovery can be had thereon for the use of any other person; and that before bringing this action it was necessary that the shares of stock be tendered by the plaintiff on demand for payment. Upon all of these contentions, propositions of law were submitted by defendants to the trial court and refused by it.

" 'Upon the contention that the agreement was without consideration. It was unnecessary that any consideration for the undertaking should pass, or be a benefit to, the defendants; they were officers or directors in the corporation and promoting it, and the promise to purchase this stock by defendants was part of the original undertaking by Kincaid and the consideration therefor was received by and passed to the corporation which defendants were then promoting, and this was sufficient consideration for their agreement to purchase of date September 15.

" 'On the contention that the agreement is unilateral and lacks mutuality. If this agreement was the sole transaction between plaintiff and defendants this contention might be well founded, but the original purchase of the stock by Kincaid and the written agreement by defendants were part of one transaction, and even though the written agreement considered alone lacks mutuality, this will not necessarily defeat an

action thereon. Where a unilateral contract has been performed by one party and the consideration for its execution has been received by the other party, the party who has performed may insist on the fulfillment of the contract. *Plumb v. Campbell,* 129 Ill. 101; *Seyferth v. G. & S. R. R. Co.,* 217 Ill. 487.'

"In *Seyferth v. G. & S. R. R. Co.,* 217 Ill. 483, cited above, a bill was filed in the Circuit Court of Menard County by Seyferth to enjoin the railroad company from going on his land. From the statement of facts made by the Appellate Court of the 4th District, from which an appeal was taken to the Supreme Court, and which statement of facts was adopted by the Supreme Court, it appears that Seyferth, in consideration of $1.00, had delivered to the railroad company a written contract by which Seyferth gave an option to the railroad company to purchase certain land at a price named, and the right of the railroad company to enter upon the land. The instrument was signed by Seyferth and his wife, but the consideration of $1.00 was not paid. After the execution of the instrument, the $1.00 consideration was subsequently tendered to the complainant Seyferth, who declined to take it. Upon the railroad company attempting to take possession of the land in question, Seyferth filed the bill for injunction named. Upon a hearing, the bill was dismissed, and on appeal to the Appellate Court, the judgment of the Circuit Court was affirmed, and as stated, on appeal to the Supreme Court, the Appellate Court was affirmed. It was insisted by the complainant Seyferth in the court below and in the Appellate and Supreme Court that the instrument executed was unilateral, and that there was no consideration for its execution. In passing upon this question, the Supreme Court said:

" 'We might further add that it is now universally held that a written agreement to convey land, at the option of the proposed vendee, within a given time and at a certain price, if made upon a sufficient considera-

tion, with full knowledge on the part of the person extending the option that he is bound and the other is not, is such a contract, though lacking mutuality, as will be enforced in equity, where the party holding the option signifies his acceptance within the time limited upon the terms as stated; and as is said in *Guyer v. Warren,* 175 Ill. 328, ''where the one holding a buyer's option makes his election to purchase, and tenders the amount agreed to according to the terms of the contract, it is the duty of the seller to accept the price and execute a deed to the purchaser for the property. . . . Such contracts are perfectly valid, and it is now well settled that a court of equity may decree a specific performance of them,''—citing *Watts v. Keller,* 56 Fed. Rep. 1.' ''

Defendant insists that the contract here was an option contract, and that this option did not expressly make the same obligatory upon the personal representatives of the obligor after the death of the obligor. The contract provides in terms, as already noted, that if at any future date, plaintiff might choose to sell all or any part of the bonds mentioned, and if at that time, Charles H. Roach & Company would not purchase from plaintiff any of the bonds at a price satisfactory to the plaintiff, then Carl H. Weil and Charles H. Roach, as individuals, would, upon 60 days' notice given in writing, purchase from the plaintiff any or all of the bonds at the original price, namely: $99 plus accrued interest. Within less than two years after the execution of the contract, the firm of Charles H. Roach & Company was dissolved. As stated, Charles H. Roach died on June 14, 1933, and Carl H. Weil died in the following November. The record indicates that prior to the death of Carl H. Weil, the city of Chicago had defaulted in the payment of the bonds purchased, and that before his death, an effort was made by the plaintiff to secure a settlement with Weil. On December 27,

1933, letters testamentary were issued to the defendant in this proceeding, and the claim against the estate of Carl H. Weil was filed in the probate court on July 15, 1935.

It is insisted by defendant that under section 64 of the Uniform Sales Act, chapter 121a, Illinois State Bar Stats. 1935, ¶ 67; Jones Ill. Stats. Ann. 121.68, entitled, "Remedies of the Seller," if plaintiff can recover at all, it must be for "the difference between the contract price and the market or current price at the time or times the goods ought to have been accepted." There is no question involved here as to price, or the acceptance of bonds, and in our opinion, the statute referred to is not involved. As we view the contract between the parties, it indicates clearly that at the time plaintiff purchased these bonds, and as a part of the consideration, Carl H. Weil agreed that if at some future date, plaintiff chose to sell the bonds, and if Charles H. Roach & Company would not purchase the same, that he, Weil, would purchase them and pay the price named, together with accrued interest.

It is also insisted that this claim cannot be maintained against the estate of Carl H. Weil. In *Smith v. Wilmington Coal Mining & Mfg. Co.*, 83 Ill. 498, one Charles Smith, in his lifetime, had a contract with the Wilmington Coal Mining & Mfg. Company, by which it was agreed that the company would deliver to Smith certain cars of coal during a certain period. It was proven that the company entered upon the contract, and that before its completion, Smith died. On demand being made by the administratrix that the company continue its delivery, the company declined, placing its refusal on the ground that the death of Smith had put an end to the contract, and in holding that this was not a law, the court said:

"It is a misapprehension of the law to suppose the death of one of the contracting parties put an end

to the contract. For any breach after, as well as before, the. death of such party, his estate would be liable to respond in damages. It is conceded, the county court could have directed the administratrix to carry out the contract made with decedent. The admission implies the continued existence of a valid contract, and for any breach thereafter, the administratrix might maintain an action. But, in our view of the law, she had that right independently of the statute, taking upon herself all the risk incident to the further execution of the contract."

We are of the opinion that the defense made here is without merit, and that the judgment of the circuit court should be, and it is affirmed.

*Affirmed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.