(No. 25388.—

MARK GREER *et al.* Appellants, *vs.* THE CARTER OIL COMPANY *et al.* Appellees.

*Opinion filed February 21, 1940.*

WILL M. ALBERT, and ROBERT G. BURNSIDE, for appellants.

WALTER DAVISON, CRAIG & CRAIG, W. F. SCHUERMEYER, and W. F. SONNEMANN, (L. G. OWEN, of counsel,) for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellants, Mark Greer and J. G. Burnside, filed a complaint in the circuit court of Fayette county against the Carter Oil Company and C. R. Bennett, for partition and removal of clouds upon 144 acres of land. The issue involved is the validity of a certain oil and gas lease to the Carter Oil Company and a mineral deed to C. R. Bennett, there being no controversy about the right to partition the surface of the land. The circuit court found the oil lease and mineral deed valid and, the three-year term of the oil lease having expired, the court by its decree provided additional time should be given to drill a well. Appellants appeal directly to this court because a freehold is involved.

The controversy grows out of the validity of an oil and gas lease given by Bennie Irey Shaw to the Carter Oil Company on May 28, 1936, and recorded on June 24, 1936, and the deed to one-half of the minerals, made by Bennie Irey Shaw to C. R. Bennett on September 28, 1936, and recorded on the same day. On these dates, Mark Greer was the owner of said land, subject to the life estate of Bennie Irey Shaw, and the tenant rights of appellee Anderson, but his deed was not on record. The pertinent facts are as follows: April 16, 1919, Bennie Irey Shaw was the owner of the premises. She was having trouble with her husband who had moved to Iowa. She went to him and procured his signature to a deed, blank as to grantee. She brought this deed home and went to the office of one Charles Kanatzar and filled in his name as grantee and talked about what she wanted done with the property when she died, but took the deed away with her. In 1933, Mrs. Shaw wanted to give the property to the Southern Illinois Conference of the Methodist Church and asked Kanatzar to make a deed to it but because of certain conditions in the deed the grant was refused by the church and Mrs. Shaw retained possession of that instrument. On November 13, 1933, at

the request of Mrs. Shaw, Kanatzar and his wife made a quitclaim deed of the premises to J. G. Burnside and delivered it back to Mrs. Shaw. On November 15, 1933, Bennie Irey Shaw executed a quitclaim deed to Mark Greer for the use of the Mark Greer Hospital, retaining a life estate in the land, and at that time turned over to Burnside the deed made to Kanatzar in 1919 and the deed made from Kanatzar to Burnside in 1933, and had them turned over to Mark Greer at the same time her deed was delivered to Mark Greer. None of these deeds were recorded until about two years after the oil lease and mineral deed. On July 8, 1938, J. G. Burnside and wife made a quitclaim deed to Mark Greer and on September 29, 1938, Mark Greer and wife and Bennie Irey Shaw conveyed a 1/28 undivided interest to J. G. Burnside. On October 18, 1938, the suit was filed.

The complaint alleges that on November 15, 1933, when Mrs. Shaw's deed was made to Mark Greer, she was the owner of the lands and, from 1933 to 1937, taxes were assessed against the land in her name.

The oil and gas lease was for a period of three years and, by its terms, it expired May 28, 1939, and the mineral deed was for a period of twenty-five years. It is admitted that Charles L. Kanatzar was the agent of the Carter Oil Company in procuring the oil and gas lease. Appellants claim that he was the agent of Bennett in procuring the mineral deed but this is denied, appellees claiming he was a broker.

The substantial points urged by appellants for reversal are: First, that the Carter Oil Company was not an innocent purchaser for value because it was charged with notice of a defective title through its agent, Kanatzar; second, that the Carter Oil Company is not an innocent purchaser for value because the full consideration agreed to be paid was not paid at the time this suit was instituted; third, that the circuit court had no authority to extend the period

of the lease beyond May 28, 1939, and fourth, that the mineral deed to C. R. Bennett is invalid because it was procured through an agent who had not only constructive but actual notice of appellants' title.

In arguing the first point appellants have assumed that Mrs. Shaw was not the holder of the legal title because of the deed made in 1919 to Kanatzar, possession of which she retained. They contend that notice to Kanatzar of the undelivered deed to him and the unaccepted deed from him to the board of the Methodist church and the quitclaim deed from Kanatzar to Burnside, are sufficient to put appellee, the Carter Oil Company, on notice of Mark Greer's title on November 15 by a direct deed from Mrs. Shaw. It is not claimed that Kanatzar ever knew about this deed and he denies that he ever had knowledge of its execution. Appellees say that if these facts amounted to notice they are not material because the information was acquired before he became the agent of the Carter Oil Company. The law on this subject is well stated in *Snyder* v. *Partridge*, 138 Ill. 173, where it is held to be the general rule that information acquired before the commencement of an agency will not be charged to the principal unless it is clear that the information obtained by the agent in a former transaction was so precise and definite that it is or must be present to his mind and memory while engaged in the second transaction. Ordinarily, it is presumed to have been forgotten. We think, however, the evidence clearly shows Kanatzar knew and remembered his transactions with Mrs. Shaw but the serious question is whether they are material in any way to the present situation.

When Kanatzar's name was inserted in the deed of 1919, Mrs. Shaw retained possession, and it is elementary that no title passes unless a deed is delivered. Fourteen years later, in 1933, when Mrs. Shaw was sick and wanted to convey to the church, she called upon Kanatzar to make a deed which was not accepted and was returned to her.

Shortly afterwards, in the same year, she requested Kanatzar to make a deed to J. G. Burnside which he did, and delivered the same to her, and when Mrs. Shaw decided to convey to Mark Greer in 1933 she executed the deed, herself, and handed to Burnside the other deeds to and from Kanatzar, possession of which she had retained. It is from these transactions that notice of Mrs. Shaw's conveyance is supposed to have been obtained. From the beginning of the transaction it is obvious Mrs. Shaw did not consider Kanatzar an owner and he did not consider himself one. Appellant Burnside was in no position to complain because he conveyed to Mark Greer after the oil and gas lease was recorded and derived his title from Mark Greer and Mrs. Shaw. If the transactions with Kanatzar were inoperative and he had no knowledge of Mrs. Shaw's conveyance, the Carter Oil Company, through him, had no notice of anything that would show the rights of Mark Greer in 1936, when his deed was not recorded. Knowledge of the acts of strangers to the title is not notice of the rights of one claiming under an unrecorded deed. The law only charges purchasers with notice of conveyances in the direct line of title. *Miller* v. *Larned,* 103 Ill. 562; *Bittner* v. *Field,* 354 id. 215.

The next contention is that the Carter Oil Company is not a *bona fide* purchaser for value because, it is claimed, all of the consideration provided in the oil and gas lease to be paid had not been paid at the time the deeds to Greer and Burnside were recorded. It seems to be settled that where land is purchased from one not owning it and the purchaser claims to be a *bona fide* purchaser for value without notice, it is incumbent upon such purchaser to show not only that he had a conveyance for the land but that he actually paid for it. It is not sufficient that he may have secured the payment of the purchase price. (*McGuire* v. *Gilbert,* 270 Ill. 160; *Moshier* v. *Knox College,* 32 id. 155.) Appellants claim that this principle is applicable here be-

cause the real consideration is a covenant to drill for oil, which requires an examination of the lease. This instrument provides as follows: That the lessor in consideration of one dollar, receipt of which is acknowledged, leases the land for the sole purpose of mining for oil and gas; the period is to be for three years or as long as oil and gas is produced; the lessor is to get certain proportions of the oil and gas saved; if no well is produced within a year the lease shall determine, but an option is granted to extend the period for one more year by the payment of ten cents an acre, and a second option, for a like purpose and like period for the same consideration. The lease contains this covenant: "And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid but also the lessee's option of extending that period as aforesaid and any and all other rights conferred."

The instrument is under seal and is a present grant for a certain purpose together with an option for the same consideration of extending the period. This court has repeatedly held that similar leases grant a freehold estate. (*Watford Oil and Gas Co.* v. *Shipman,* 233 Ill. 9; *Poe* v. *Ulrey,* id. 56; *Gillespie* v. *Fulton Oil and Gas Co.* 236 Ill. 188; *Ohio Oil Co.* v. *Daughetee,* 240 id. 361.) The down payment is also consideration for an option to extend the time within which the lessee may drill. Such an option may not be withdrawn until the expiration of the time limited, and one dollar is a sufficient consideration for such option, (*Guyer* v. *Warren,* 175 Ill. 328; *Adams* v. *Peabody Coal Co.* 230 id. 469;) and the lease, being under seal, in itself imports a consideration. (*Hayes* v. *O'Brien,* 149 Ill. 403.) Where the conveyance acknowledges the receipt of consideration it may not be disputed for the purpose of invalidating the instrument or impairing its effect as a conveyance. (*Poe* v. *Ulrey, supra; Gillespie* v. *Ful-*

*ton Oil and Gas Co. supra.*) It is not argued that the consideration for the conveyance and the option is inadequate but the assertion is made that the drilling and producing of oil is the real consideration. The instrument does not show this. It does not contain any unqualified promise to drill. The covenant of the lessee is to drill or pay rental, and the down payment is recited to be consideration not only for the license to go upon the ground for the full period of one year but for an option to extend that period for two other periods of one year upon payment in advance of $14.30 per year. Since there is no unqualified covenant to drill, neither it, nor the oil which might be produced by drilling, is unpaid consideration. The money to be paid by way of rental is not unpaid consideration but is a price fixed under an option made at the beginning of the lease for the extension period. The drilling of this land or adjoining land may disclose that it is very valuable, but the mere fact that it has become valuable after the grant and option is executed, does not establish that there is any unpaid part of the consideration remaining as of the time when the grant was made. Under the terms of this oil lease, the grantor could never have required the payment or delivery of anything more for the grant and options than what was paid in the first instance. There is testimony that the down payment was one customarily paid for leases in wildcat territory, and the mere fact that time may have increased the value of the grant cannot change the situation as it existed at the time it was made. We are of the opinion that under the uniform construction we have given to oil and gas leases and option contracts, the drilling of the land was not a deferred part of the consideration of the lease nor was its performance obligatory upon the part of the oil company in order to make it a *bona fide* purchaser for value.

Appellants urge that the circuit court had no power to decree that the Carter Oil Company had a reasonable time

after the termination of the litigation in which to perform the terms of the lease because it had expired during the course of the litigation.

The evidence shows that Mark Greer acquired title from the owner, Mrs. Shaw, in 1933. The deed was not recorded. The Carter Oil Company lease from Mrs. Shaw was made in May and recorded in June, 1936. In May, 1937, and May, 1938, rental of $14.30 was paid the grantor, Mrs. Shaw, by depositing it in the bank at St. Elmo. The first producing well in this territory was brought in in January, 1938. The tax records show payment by Mrs. Shaw for the years 1934, 1935, 1936 and 1937. There was nothing to indicate appellants claimed prior rights until July, 1938, when the deeds were recorded. The suit to cancel the leases was started in October, 1938. A serious question was thus raised as to the validity of the oil lease. If the contention of appellants was right it was absolutely void. If, during the remaining seven months of the lease, appellees produced a well, they would be liable to account for the oil produced as though they were trespassers. (*Bruner* v. *Hicks,* 230 Ill. 536.) If they brought in a dry hole they might be liable for damages for destroying the market value of the leasehold. It was extremely hazardous for appellee, the Carter Oil Company, to move in any direction until the litigation was settled and it, of course, could not control the duration of the litigation. This situation was brought about by the grantor of both appellants and appellees, namely Bennie Irey Shaw. It could have been avoided had appellants placed their deeds of record and given notice to the world of their rights. Under these conditions, does the principle of estoppel apply to give appellees a reasonable additional period beyond the term of their lease in which to exercise their right to drill? As affecting oil and gas leases, this is a new proposition in Illinois but the general principle is recognized. In *Mills* v. *Graves,* 38 Ill. 455, an estoppel is defined to be an impediment or bar to the

assertion of a right of action arising by means of a man's own act or where he is forbidden to speak against his own act and extends to and binds privies in blood, privies in estate and privies in law. In *First Lutheran Church* v. *Rookscreek Church,* 316 Ill. 196, it was invoked to prevent the forfeiture of an estate by breach of condition subsequent induced by acts of grantor.

In *Lehman* v. *Webster & Co.* 209 Ill. 264, it was said, where time was of the essence of a contract, that a party who prevents performance within the stipulated time will not be allowed to avail of the non-performance he has occasioned to avoid the agreement. In *Bondy* v. *Samuels,* 333 Ill. 535, we said: "Estoppel may arise from silence as well as words. It may arise where there is a duty to speak and the party on whom the duty rests has an opportunity to speak and, knowing the circumstances, keeps silent. (*Milligan* v. *Miller,* 253 Ill. 511; *Oliver* v. *Ross,* 289 id. 624.) It is the duty of a person having a right, and seeing another about to commit an act infringing upon it, to assert his right. He cannot, by his silence, induce or encourage the commission of the act and then be heard to complain."

The great weight of authority in other States holds that where the lessor brings suit to avoid an oil and gas lease and the litigation ends after the grant has expired, that the lessors are estopped to claim the lease is invalid because the term has expired, and that an additional period of time may be fixed by a court of equity in which to commence drilling operations. *Violette* v. *Gaertner,* 261 Mich. 6, 245 N. W. 554, 555; *Hodges* v. *Miller,* 244 S. W. (Tex. Civ. App.) 634; *Eastern Oil Co.* v. *Coulehan,* 65 W. Va. 531, 64 S. E. 836-841; *Chapman* v. *Bowers,* 67 Pac. (2d) (Okla.) 788, 789; *Hudspeth* v. *Schmelzer,* 77 Pac. (2d) (Okla.) 1123; *Amerada Petroleum Co.* v. *Doering,* 93 Fed. (2d) (C. C. A. 5th) 540, 542; *Continental Oil Co.* v. *Osage Oil and Refining Co.* 69 Fed. (2d) (C. C. A. 10th) 19-24; *Texas Pacific Coal & Oil Co.* v. *Patton,* 238 S. W.

(Tex. Civ. App.) 202, 203; *Standard Oil Co.* v. *Webb,* 149 La. 245, 88 So. 808; *Simons* v. *McDaniel,* 7 Pac. (2d) (Okla.) 419.

In most of these cases the doctrine was applied in cases where the lessor brought about the delay, but in the cases of *Standard Oil Co.* v. *Webb, supra,* and *Simons* v. *McDaniel, supra,* the suits were brought by the assignees or grantees of the lessor. Under these authorities, Bennie Irey Shaw would be estopped to claim a forfeiture under the circumstances of this case. Appellants derive their title from her and it was within their power to prevent a fraud being perpetrated upon third parties by recording their deeds. The lease of appellee the Carter Oil Company was recorded more than two years before the deeds of appellants were placed on record. During all this time appellants had notice that there was an outstanding title created by their grantor and suit was not begun until insufficient time was left to have the litigation terminated prior to the expiration date of the Carter Oil Company's lease. This situation, in our opinion, comes squarely within the majority rule of other jurisdictions and the principle has long been recognized in this State. We think the extension order was justified, but that the date to commence drilling should be definitely fixed and not left to construction as to what is meant by "a reasonable time." It has been suggested that the Carter Oil Company could have proceeded to drill without regard to the suit and should not be permitted to claim the benefit of an estoppel unless it was actually prevented by court order or otherwise. In the cases from foreign jurisdictions this was not required, and when the great loss the lessee might suffer by successfully drilling a well and then losing title to the land is considered, we do not think that it should be required. There are other points raised in the brief which are not argued and are, consequently, deemed waived.

The prayer for relief against appellee C. R. Bennett is predicated upon notice through Kanatzar who is claimed to be his agent. Agency is denied, leaving the question one of fact. Kanatzar's connection with the title is urged by appellants as notice to appellee Bennett, but what we have heretofore said with reference to this notice applies to both appellees, since the only difference in the facts is that Bennett acquired his title about two months later. Actual notice is claimed because Mrs. Shaw testified she told Kanatzar that she did not own the property at the time she made the mineral deed. This conversation is denied, and there is no other testimony on this point, and the chancellor was in the best position to judge of the weight and credibility of the testimony. His findings will not be disturbed unless manifestly and palpably against the weight of the evidence. (*Hall* v. *Pittinger,* 365 Ill. 135; *Page* v. *Keeves,* 362 id. 64.) If, therefore, it be assumed that Kanatzar was the agent for Bennett, notice of facts sufficient to put appellants upon notice have not been established. As to appellee Bennett, we think the proof is insufficient to overrule the findings of the chancellor.

The decree of the circuit court is affirmed in all respects as to both appellees except as to that part of the decree fixing a reasonable period after the termination of the litigation for the drilling of the well by the Carter Oil Company. The decree should be amended so as to extend the time of drilling for the period of six months from the date the affirming order of this court is filed with the clerk of the circuit court.

The decree is reversed and the cause remanded for such purpose, only, and in all other respects the decree is affirmed.

*Decree modified and affirmed.*