## SUPERIOR OIL CO. v. HARSH et al.

### No. 141–D.

District Court, E. D. Illinois.

June 8, 1943.

W. B. Wagner and J. P. Adoue, both of Houston, Tex., and Charles Wham and John P. Wham, both of Centralia, Ill., for plaintiff.

Ray M. Foreman and Wm. Acton, both of Danville, Ill., and Russell Wilson, of Centralia, Ill., for defendants.

LINDLEY, District Judge.

This cause has to do with $29,077.88, proceeds from the sale of oil deposited in the registry of this court, pending litigation. The facts involved in the original hearing are fully set forth in Superior

Oil Co. v. Harsh, D.C., 39 F.Supp. 467 and Id., 7 Cir., 126 F.2d 572. Plaintiff, who has been adjudged entitled to the oil, seeks to recover the entire amount. Defendants, who have been declared trespassers, seek reimbursement for all the expense incurred by them in drilling the well from which the oil was produced and in producing the oil, or, in the alternative, if denied recovery in full, for all costs incurred from and after April 30, 1941, when, by stipulation of the parties, approved by the court, defendants were permitted to continue to produce oil pending litigation.

On the record defendants were trespassers. Whether they were willful or inadvertent in their actions is probably immaterial, but a discussion of the respective alternative conclusions will be included.

▮▮ In Illinois a trespasser who mines and removes minerals from the lands of another subjects himself to liability in damages to the true owner for the value of the mineral, if removed from the estate, at the place of severance. He is not to be credited for expense incurred or labor bestowed in production. The courts of Illinois have applied this rule even though the trespass may have been inadvertent, but have indicated that, when circumstances in aggravation are relied upon, additional punitive damages may be recovered. Illinois & St. L. R. & Coal Co. v. Ogle, 82 Ill. 627, 25 Am.Rep. 342; Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.St.Rep. 332; Greer v. Carter Oil Co., 373 Ill. 168, 25 N.E.2d 805; Zeigler v. Brenneman, 237 Ill. 15, 86 N.E. 597; Washington Ice Co. v. Shortall, 101 Ill. 46, 40 Am.Rep. 196; Shell Oil Co. v. Dye, 7 Cir., 135 F.2d 365; Shell Oil Co. v. Manley, 7 Cir., 124 F.2d 714; 7 A.L.R. 930. The rule was specifically applied to wrongfully recovered oil in Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.St.Rep. 332; Gillespie v. Fulton Oil & Gas Co., 239 Ill. 326, 88 N.E. 192; Zeigler v. Brenneman, 237 Ill. 15, 86 N.E. 597. Inasmuch, therefore, as defendants drilled the well as trespassers, in accounting for the oil produced, they are entitled to no credit for the expense incurred in drilling.·

▮ Defendants insist, however, that the Illinois doctrine had birth in erroneous reasoning and that if the issue were squarely presented to the Supreme Court today, certain various expressions uttered in the past would lead inevitably to rescission of the rule or, at least, to its modification to

the extent that, if the trespass should be found to be inadvertent or in good faith, credit for expense of production would be allowed. Sufficient reply to this suggestion is that we can not speculate as to future decisions. But even were the court 'to modify its rule, as it is contended it might, I think defendants have not brought themselves within the class of inadvertent or good faith trespassers.

▮ Defendants were trustees of the school located on the property and their lessees. They had no title of record, but based their claim to ownership on allegedly adverse possession and a presumption of a lost grant. The evidence submitted did not sustain either premise and there was absence of proof that the owner and his predecessors ever treated the trustees as other than permissive occupants. The record owners had at all times paid the taxes on the land, which at no time had been excepted from the whole tract on the tax books. Never, until this suit was instituted, had there been any controversy as to the title. At best, defendants' claim hung upon extremely slender threads. They attempted to interest the Evansville Refinery in drilling for oil, but, after an investigation that company declined to act. This refusal alone was notice to defendants that their claim, at its best, was exceedingly doubtful.

▮ Despite this and with knowledge of plaintiff's claim of superior title, defendants moved onto the land under a contract whereby they were to be compensated wholly from such oil, if any, as should be found and produced and, over the express objection of plaintiff, commenced drilling without attempt to reach an understanding with plaintiff, or to procure an adjudication in court. With these facts in mind, I can not say defendants entered in good faith and with a reasonable belief that their action was rightful. Although they assert that they did not commit the trespass with willful intent to overrun plaintiff's rights to its detriment, they at least showed such such reckless disregard for the rights of plaintiff as to brand them as willful or intentional trespassers. See Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 8 Cir., 129 F. 668, 679; United States v. Homestake Min. Co., 8 Cir., 117 F. 481, 485.

Those cases which have declared a trespasser to be acting inadvertently or in good faith are those where interpretation of a statute was uncertain and the trespasser

had acted upon the advice of reputable counsel, United States v. Midway Northern Oil Co., D.C.S.D.Cal., 232 F. 619; where an assignment apparently valid was held to be invalid. Gladys City Oil, Gas & Mfg. Co. v. Right of Way Oil Co., Tex.Civ.App., 137 S.W. 171; or where a government official wrongfully granted permission. United States v. Homestake Min. Co., 8 Cir., 117 F. 481. In all such cases the trespasser acted upon a reasonable belief that he was acting legally and without knowing that plaintiff had rights which might well be superior.

■ To hold that defendants were not intentional trespassers would lead to a situation where any person with even the remotest claim of right could enter upon another's property and proceed to drill for oil, mine coal, or cut timber, hoping or taking a chance that the court, when the real landowner protested, would find in his favor. If he were found to have no right to the land, he would lose nothing since he could fall back on his assertion of title, declare himself an honest, mistaken trespasser and be compensated for any expense incurred. To allow such a trespasser to proceed with impunity would work grave injustice to the true owner, and result in endless litigation with the necessity of time-wasting accountings. Where a person asserts a claim and has been forewarned that his chances of being declared the true owner of the land are remote, and has full knowledge of the claim of superior title of record, as here, his recourse should be to the courts.

Since defendants were willful, or at least reckless trespassers, they may not be heard to say that they should receive compensation for expenses incurred by them in the production of the oil, prior to the time the court took supervision of the drilling.

■ Defendants further assert, however, that even if they are willful trespassers, they are entitled to mitigation on the ground that the well was so situated as to drain portions of the subsurface which could not be drained by plaintiff's surrounding wells. The evidence does not substantiate this premise. Nor is a willful trespasser entitled to the benefits of any changes and improvements of property possession of which is wrongfully taken by him. Gillespie v. Fulton Oil & Gas Co., 239 Ill. 326, 88 N.E. 192; Zeigler v. Brenneman, 237 Ill. 15, 86 N.E. 597; E. E. Bolles Wooden-Ware Co. v. United States, 106 U.S. 432, 1 S.Ct. 398, 27 L.Ed. 230. This is true whether the property is personalty and is changed to an article of greater value, Gillespie v. Fulton Oil & Gas Co., 239 Ill. 326, 88 N.E. 192; Zeigler v. Brenneman, 237 Ill. 15, 86 N.E. 597; E. E. Bolles Wooden-Ware Co. v. United States, 106 U.S. 432, 1 S.Ct. 398, 27 L.Ed. 230; Union Naval Stores Co. v. United States, 240 U.S. 284, 36 S.Ct. 308, 60 L.Ed. 644, or there are improvements of land as a result of the trespass. 63 C.J. (Trespass) § 239.

■ There are apparently no cases in Illinois where the specific question of the improvement of land by a trespasser has been discussed. But there is clearly no reason why a reckless trespasser should be permitted to enter upon another's property, make improvements, and then force the owner to pay for them. In Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.St. Rep. 332, the court held that the trespasser could remove none of the property placed on the land by him for the purpose of drilling oil, even though the added property increased the value of the land. And in Gillespie v. Fulton Oil & Gas Co., 239 Ill. 326, 88 N.E. 192, the court held that the trespasser, although permitted to remove some of the property placed on the land by him, could not remove any property which would injure the well or land. It should be observed that in this case plaintiff was an oil and gas lessee, and for this reason the court distinguished Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.St.Rep. 332, where the court permitted the land owner plaintiff to keep all property brought upon the land by defendant.

A unique situation exists with regard to the claim for reimbursement for expenses incurred subsequent to April 30, 1941. At that time a temporary restraining order had been entered against defendants at the suit of plaintiff and the cause had been set for hearing upon application for temporary injunction. The well had been drilled but had not been shot and, therefore, was not in production. Apparently it was believed that production was imminent, if shooting should be completed, and the parties stipulated that defendants might proceed to achieve production of oil. Defendants released plaintiff from any damages that might accrue from issuance of the restraining order. The money received from the sale of oil was to be deposited with the clerk of this court. This stipulation was submitted to the court and approved by it. It

was specifically provided that it should be without prejudice to any of the rights or remedies of any of the interested parties. Thereafter production continued. At the hearing on the merits the court found in favor of plaintiff. Superior Oil Co. v. Harsh et al., D.C., 39 F.Supp. 467, affirmed by the United States Circuit Court of Appeals, 7 Cir., 126 F.2d 572.

This court has made it a policy in extensive litigation involving issues between competitive claimants of oil and gas rights, wherever possible, to desist from appointment of a receiver. Inasmuch as, in most instances, a responsible oil company has been found engaged in drilling the well, the court has considered it more economical, less productive of costs of administration and wiser judicial action, to permit the party drilling to proceed with production depositing, pending litigation, the proceeds in court. The parties here acceded to such procedure. Both were before the court; the res was in the court's custody, and defendants, by the order of court approving the stipulation, were permitted to proceed. While the question is not free from doubt, I think the situation, in such circumstances, not far removed from one where the court appoints a receiver for the res of the estate and incurs costs of administration. Oil is a fugitive mineral and, where competing wells are drilled, drainage from one tract to another will occur unless off-setting wells are drilled. Consequently, where eventual lodgment of title may be doubtful, it is essential that the court protect the interests of the parties by permitting production, holding the proceeds for the eventual owner. Such procedure is essential if we are to prevent unfair enrichment of one party as against another. Consequently, it seems to me, that, when this court with jurisdiction of the parties and the subject matter, instead of appointing a receiver for the res, permitted defendants to proceed, so that rights of all parties could be preserved without prejudice, the resulting situation is such that, in equity, the administrative costs of production should be deducted.

Upon this reasoning, I have concluded that as to expenses prior to the stipulation, defendants are without right but that for the expenses subsequent thereto they should have reimbursement from the proceeds of the oil, eliminating, however, claims for property which plaintiff is not taking and which is surrendered to defendants. The specific details of such allowances appear in my findings of fact and,

for the convenience of the parties, in order that the issue may be eventually finally disposed of, I have made findings of fact as to expenses prior to April 30 so that if, upon review, the judgment of this court should be reversed as to the conclusion that defendants are not entitled to recover for anything before April 30, 1941, the finding will be in the record and the final judgment entered without further hearing.

The findings and conclusions herein included shall be considered a part of my more formal findings and conclusions adopted contemporaneously herewith.