## SUPERIOR OIL CO. v. SOMERS DRILLING CO. et al. (two cases).

### Nos. 8400, 8401.

Circuit Court of Appeals, Seventh Circuit.

June 13, 1944.

W. B. Wagner and J. P. Adoue, both of Houston, Tex., Charles Wham and John P. Wham, both of Centralia, Ill., for Superior Oil Co.

Leigh M. Kagy, of East St. Louis, Ill., D. S. Baldwin, and Ray M. Foreman, all of Danville, Ill., for Somers Drilling Co.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

The District Court has in its registry the sum of $29,077.88, being the proceeds from the sale of oil produced by defendants from a tract of land pending litigation which involved the validity of their lease. These appeals involve the distribution of this money.

The District Court held that interveners should be paid the costs which they had incurred from April 30, 1941, but refused to allow interveners their costs of drilling the well prior to that date. Hence $10,-327.94 was directed to be paid to interveners, and the remainder of the fund to plaintiff, Superior Oil Company.

Interveners appeal from that portion of the decree which denied them the right to recover the entire costs and expenses of drilling the well, and plaintiff appeals because the entire fund was not directed to be paid to it.

In contending that defendants had a valid title to the leasehold in question, interveners are trying to re-litigate what has already been decided against them. Superior Oil Co. v. Harsh, 7 Cir., 126 F.2d 572, affirming, D.C., 39 F.Supp. 467. As to interveners' contention that the Illinois rule—that good faith trespassers are not entitled to compensation for the costs of production—is erroneous and should not be followed because it is based upon what the Illinois court thought was the English rule, but which, in fact, is contrary to the English rule, we think it is patently unsound. It is not for this court to speculate as to future decisions of the Illinois courts. The District Court correctly ruled against interveners' contentions, 50 F.Supp. 358, and interveners' appeal is, therefore, dismissed.

The only issue, then, is whether the court was right in allowing interveners the costs which they incurred after April 30, 1941, in producing the oil from the School House well. At that time the well had been drilled, but had not been shot. Therefore, it was not in production. Production was believed imminent if the well should be shot. On April 22, 1941, plaintiff had obtained a temporary restraining order against defendants prohibiting the producing and marketing of oil from the well in question, and the cause had been set for hearing upon application for a

temporary injunction. It should be borne in mind that title to this land was in sharp dispute. Defendants believed they had a valid lease from the School Trustees, basing their belief upon an attorney's opinion that notwithstanding there was no deed of record to the School Trustees, their title was good by adverse possession.

A representative of interveners stated to plaintiff's counsel that quantities of water were in the hole so that if the well was shut down and not brought into production, there was danger of serious damage not only to this particular well but also to the oil-bearing formation of the area. If defendants were there rightfully and this occurred, plaintiff would have a liability of $10,000 under the bond that it had given for the restraining order. In this situation, the sensible thing to do was to bring the well into production on condition that the proceeds from the sale of the oil be deposited with the court.

On April 30, 1941, the parties entered into a stipulation which so provided. This stipulation included a paragraph making it subject to the approval and order of the court. Such approval was expressly given on May 2, 1941.

By the terms of the stipulation defendants released plaintiff from all damages arising from the temporary restraining order. Thus plaintiff did receive some benefit from the stipulation. Bearing in mind that it was not clear whether defendants' lease was valid, it is clear that plaintiff was anxious to escape liability on its bond. That this was a motivating cause of the stipulation is apparent from the following terms of the stipulation: "This stipulation is entered into for the purpose of eliminating, and in lieu of, any and all damages, accrued, accruing or hereafter to accrue unto the defendants by reason of the temporary restraining order heretofore entered herein, and said defendants hereby release the plaintiff from any and all claims, rights, demands, cause or causes of action which they and each of them may, might or could have or possess against said plaintiff on account thereof."

Plaintiff, as well as defendants, sanctioned going ahead with producing this oil, which necessarily meant that certain costs would be incurred. The very first paragraph of the stipulation gave the defendants the right to "* * * * maintain, operate, and produce oil from, that certain oil well. * * *." This brings to light the fundamental flaw in plaintiff's argument. For plaintiff's argument is that defendants were trespassers, and plaintiff cites certain Illinois cases to the effect that a trespasser who removes oil from the lands of another is entitled to no credit for his expenses thereby incurred.[1] But this argument ignores the instant stipulation. In the light of this express grant of the right to produce the oil, defendants and interveners can not be regarded as trespassers and penalized as such, for it is elementary that in order to be a trespasser the party must be acting without the consent of the owner of the property on which the alleged trespass is committed. Furthermore, defendants and interveners were not trespassers because they had the further assurance furnished by the court's approval. Both plaintiff and defendants were before the court; the res was in the court's custody, and defendants, by the order of the court approving the stipulation, were permitted to proceed.

The District Court concluded that the stipulation and the approval thereof by the court was in lieu of receivership pendente lite.

Plaintiff contends that in so concluding, the court erred, because defendants never applied for a receiver and there is no proof that the court would have appointed a receiver if applied for by the defendants. Obviously, no receiver was applied for because the stipulation took its place. It is reasonable to assume that defendants could have obtained a receiver to operate this well if the stipulation had not been made. Especially is this so since the court in its opinion stated: "This court has made it a policy in extensive litigation involving issues between competitive claimants of oil and gas rights, wherever possible, to desist from appointment of a receiver. Inasmuch as, in most instances, a responsible oil company has been found engaged in drilling the well, the court has considered it more economical, less productive of costs of administration and wiser judicial action, to permit the party drilling to proceed with production depositing, pending litigation, the proceeds in court. The parties here acceded to such

---

[1] Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.St.Rep. 332; Zeigler v. Brenneman, 237 Ill. 15, 86 N.E. 597; Gillespie v. Fulton Oil & Gas Co., 239 Ill. 326, 88 N.E. 192; Greer v. Carter Oil Company, 373 Ill. 168, 25 N.E.2d 805.

procedure. Both were before the court; the res was in the court's custody, and defendants, by the order of court approving the stipulation, were permitted to proceed." 50 F.Supp. 361.

A large sum had already been spent, and there was danger of not only this well but the entire formation being ruined if the well was not brought into production. Defendants thought they had a valid lease, basing their belief on fifty-five years of possession (which was believed to be adverse) in their grantor. Plaintiff's argument that the stipulation did not require the defendants to bring the well into production, while a correct statement of fact, does not militate against the court's holding that these expenses on and after April 30 were incurred with the full consent of the plaintiff and should be considered as being in lieu of a receivership proceeding, because what was done was with the full agreement of all parties and approved by order of the court.

The stipulation contained a paragraph which stated: "Nothing herein contained shall constitute or be construed as an admission, or in prejudice, of any of the asserted rights, titles and interests of the respective parties hereto as more particularly set forth in the complaint and other pleadings heretofore filed herein and constituting the subject matter of said cause, nor shall anything herein contained affect in any way the rights of the parties hereto upon the hearing of plaintiff's motion for temporary injunction."

Plaintiff argues that this clause applies with such force as to make defendants and interveners still trespassers, even after April 30. However, it seems clear that taken in its context and interpreted as of the time it was entered into, it had reference solely to the gist of the litigation, that is, whether the lease from the School Trustees was valid or not. This is analogous to an order of a court appointing a receiver, which is always without prejudice to the contentions of the respective parties.

Plaintiff's last contention is that the evidence is not sufficient to support the allowance of the claims of Atlas Supply Company and W. M. Banks.

■ An accounting decree will not be disturbed by an appellate court unless it is shown to be clearly erroneous, Shell Oil Co. v. Dye, 7 Cir., 135 F.2d 365, 370. We have examined the record, considered plaintiff's arguments, and have reached the conclusion that plaintiff has not demonstrated that the allowances are clearly erroneous, except as will be presently noted.

The Atlas claim was allowed in the sum of $1,564.22 for equipment furnished subsequent to the stipulation. The record discloses that the materials are those covered by a contract dated May 19, 1941, aggregating $1,318, on account of which Banks paid $300, and since Atlas concedes that the court failed to allow a credit for this $300, the amount due Atlas is $1,018.

Banks' claim was allowed for $6,004.72. We think there was evidence clearly showing that $133 of the amount of this claim was paid before the stipulation; consequently, the claim should be disallowed to that extent. The claim will be allowed in the sum of $5,871.72.

The decree of the District Court is modified in accordance with this opinion, and as modified, it is affirmed.