(No. 34273.—

ORMOND BROOKENS *et al., vs.* PEABODY COAL COMPANY *et al.*—(C. ARCHIE SCHRYVER *et al.,* Appellants, *vs.* GEORGE MARAS *et al.,* Appellees.)

*Opinion filed May 23, 1957.*

DAVISON & DAVISON, of Springfield, and JOHN W. COALE, of Taylorville, (EUGENE L. DAVISON, of counsel,) for appellants.

STUART J. TRAYNOR, of Taylorville, for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Plaintiffs C. Archie Schryver and Frank Sgro, and others not parties to this appeal, filed suit against Peabody Coal Company to determine ownership of oil and gas under lands owned by a number of persons including the defendants herein, George and Sophie Maras. The latter, upon motion, were granted a separate trial. This appeal by the named plaintiffs is from the decree of the circuit court of Christian County, dismissing the complaint as to the individual defendants.

The Marases executed an oil-and-gas lease to Schryver and Sgro for a ninety-day primary term on October 24, 1955. On the same day the parties entered into a supplemental agreement which recited among other things the execution of the lease, provided for the nullification of same if ownership of the oil and gas was determined to be in persons other than the lessors and made it incumbent upon appellants to pay all expenses of sustaining lessors' title. The pertinent parts of the agreement are contained in the third and fourth paragraphs, which read:

"* * * whereas there exists an alleged mineral deed to said premises conveying the coal and other minerals, and whereas because of such deed litigation may develop by the claimants under said deed, which litigation may extend beyond the ninety day limitation in said lease.

"That in the case of said litigation or claim by said claimants it is agreed by the parties to said lease—that the said ninety day period named in said lease shall be extended until said litigation is fully settled and the rights of the parties with relation thereto are fully determined and settled."

Appellants contend that they have complied with the terms of the supplemental agreement by instituting suit to remove the claim against appellees' title within the primary term and that the lease is still in force. Appellees assert that such agreement contemplated an extension of the lease only in the event litigation was initiated by third-party claimants.

The material facts are not disputed. Appellants did not commence drilling within the ninety-day period. They interviewed officers of Peabody Coal Company and ascertained that said company claimed ownership of the oil and gas underlying appellees' land. Negotiations for a settlement of the ownership question and the right to drill were unavailing.

Thereupon, within the ninety-day primary term, appellants joined land owners in the area from whom they had acquired oil-and-gas leases in a suit to remove Peabody's claim against the land of all the parties as a cloud upon their title and to restrain it from interfering with oil-and-gas development. The appellees in this separate proceeding were joined with Peabody as defendants and the same relief was prayed for on their behalf against that company.

There is no allegation or proof of fraud or mistake. The sole question is whether the adverse claim and action taken by appellants had the effect of keeping the lease in force and thereby extending the time within which a well could be commenced.

The answer lies in the oil-and-gas lease and supplemental agreement. The lease is a printed form of the type customarily used in Illinois with the delay rental clause stricken and the agreement is a separate typed document. They were executed at the same time, as one transaction, and must be read and considered together as a single instrument to arrive at the meaning and intention of the parties. *Illinois Match Co.* v. *Chicago, Rock Island and Pacific Railway Co.* 250 Ill. 396.

Appellees stress the phrase "litigation may develop by the claimants" appearing in the third paragraph of the agreement, but practically ignore the phrase "in the case of said litigation *or claim* by said claimants" set out in paragraph four. Their emphasis upon the phrase in the third paragraph might be more easily justified if that language appeared in the fourth paragraph, since the third paragraph is in the nature of a preliminary recital while the operative part of the agreement is contained in the fourth paragraph. Generally, the recognized rule is that the obligations and promises of the parties in the operative portion of a contract prevail over a preliminary recital or preamble. (*Chicago Daily News, Inc.* v. *Kohler,* 360 Ill. 351.) To sustain appellees' view, the reverse of the rule would have to be invoked.

Even though the third and fourth paragraphs of the agreement be given equal weight we think it clear from a reading of the whole lease and contract that the term of the lease was extended by any litigation instituted in good faith, whether initiated by the lessees or a third-party claimant. If, as contended by appellees, the intention was that drilling had to commence within the ninety-day primary term, there would have been little, if any, need for a supplemental agreement. The commencement of the well would have complied with the terms of the lease whether the drilling was stopped by litigation or not. The only way

the contract could then have been operative was the filing of a suit by Peabody prior to any overt act on the part of appellees. There is nothing in the record to indicate that Peabody contemplated any such immediate action.

Lessees were obligated under the agreement to defend their lessors' title by the sixth paragraph which reads: "It is further agreed that the lessees shall pay all expense of sustaining lessors' title to the oil, gas and allied products conveyed under this lease." When lessees upon inquiry found that Peabody was actually asserting a claim of ownership they filed suit to clear their and appellants' title. This they had a right to do as prudent operators. The lessee under an oil-and-gas mining lease should do what a prudent operator, using reasonable diligence, would do, having in mind the best interest of lessor and lessee. *Carter Oil Co. v. Dees*, 340 Ill. App. 449.

Here a claim was asserted which could only be settled by litigation, the lessees were under contractual obligation to sustain their lessors' title, and suit was instituted against the third-party claimant without undue delay. Their actions are in direct contrast to those of the lessors. Apparently they not only failed to co-operate with their lessees to resist Peabody's claim but, on the contrary, added this separate litigation to the burden of lessees.

It is true that appellants could have avoided this phase of the litigation by commencing a well within the primary term since the sole contention of appellees is that the agreement contemplated a suit against their lessees before the term of the lease would be extended. A prudent operator could not be expected to hazard large amounts for drilling in the face of an asserted adverse claim to his leasehold title. As we said in *Greer v. Carter Oil Co.* 373 Ill. 168, at 176: "It was extremely hazardous for appellee, the Carter Oil Company, to move in any direction until the litigation was settled and it, of course, could not control the duration of the litigation." Here, the action taken by

lessees was a natural one by prudent operators when their suspicions were confirmed that there was an adverse claim and there is no contention that Peabody had not asserted a claim. It follows, therefore, that if the words in the fourth paragraph of the agreement "in the case of said litigation or claim by said claimants it is agreed  *  *  * that the said ninety day period named in said lease shall be extended" had any meaning at all, the assertion of the claim was sufficient justification to commence litigation and to cause the lease to be extended.

There is no merit to the claim of appellees that the contract lacks mutuality of remedy. We are of the opinion that the lodging of a claim and the filing of a suit by the lessees in apt time had the effect of extending the term of the oil-and-gas lease under the terms of the supplemental agreement until such litigation is terminated.

The decree of the circuit court is reversed and the cause is remanded, with directions to enter a decree in accordance with this opinion.

*Reversed and remanded, with directions.*