RUTH ANN MASCHHOFF, Plaintiff-Appellee, v. EDWARD J. KLOCKEN-KEMPER, Defendant-Appellant.

Fifth District No. 5—99—0276

Opinion filed December 7, 2000.

Clarence W. DeMoss, of Hohlt, House, DeMoss & Epplin, of Nashville, for appellant.

Jay H. Fyie, of Fyie & Hawkins, of Fairfield, for appellee.

JUSTICE MAAG delivered the opinion of the court:

This action was brought by Ruth Ann Maschhoff (plaintiff) against Edward J. Klockenkemper (defendant) pursuant to the Illinois Oil and Gas Lease Release Act (765 ILCS 535/0.01 *et seq.* (1996)). Plaintiff is seeking the forfeiture of an oil and gas lease due to defendant's nonproduction. Subsequent to a bench trial on the stipulations and admissions of the parties, the circuit court entered judgment for plaintiff against defendant. Defendant appeals.

The relevant facts are as follows. Plaintiff is the owner of the surface, oil, and gas of the following described real estate: "W 1/2 SE 1/4, Section 6, T3N, R2W of 3rd P.M., Clinton County, Illinois." Plaintiff's parents are Reinhold and Lorna Twenhafel.

On July 29, 1954, the Twenhafels, as lessors, executed an oil and gas lease to Denzil U. Webster and A. M. Perrine, as lessees, covering the aforementioned real estate. The Twenhafels and plaintiff and her husband executed another oil and gas lease on May 11, 1977, to defendant, covering the same real estate. Both leases were recorded.

The 1977 Twenhafel lease provided that it was for a term of one year from the date of the lease and as long thereafter as oil, liquid hydrocarbons, gas, or their respective constituent products or any of them were produced from the real property. The lease further provided that after a discovery of oil, liquid hydrocarbons, gas, or their respective constituent products or any of them, if the production therefrom should cease from any cause, the lease would not terminate if the lessee commenced additional drilling or reworking operations within 60 days thereafter.

The last oil sold from the real property pursuant to production from the 1977 Twenhafel lease was in 1987. Additionally, there have been no operations for the production of oil or gas from the real property or for drilling or reworking since 1987. The parties agree that oil-

and-gas-producing equipment remains on the real property and that four well bores are located on the real property.

In August of 1977, defendant filed suit against Charles E. Fisher and others in Clinton County circuit court, No. 77—L—24. The issue in that lawsuit was whether the 1954 Twenhafel lease was valid. Fisher and others were the working-interest defendants in No. 77—L—24 and are the assignees of the 1954 Twenhafel lease.

In June of 1979, defendant went into possession of the 1977 Twenhafel lease. On June 6, 1980, the circuit court of Clinton County in No. 77—L—24 granted defendant permission to operate the oil wells on the 1977 Twenhafel lease using oil sale proceeds from the lease to pay his operating costs. While this judgment was later vacated, defendant did nothing to protect his interest during the seven years of litigation, and this order was reinstated against Fisher in 1987.

In 1989, defendant decided not to spend an estimated $80,850 on the lease for rework, major repairs, and replacement equipment. Defendant claimed that he did not want to expend the funds unless he knew for certain that his oil and gas lease was valid. Pursuant to Supreme Court Rule 23 (134 Ill. 2d R. 23), this court in *Klockenkemper v. Fisher*, No. 5—96—0002 (April 22, 1997) (unpublished order under Supreme Court Rule 23), put the parties back in the same position that they were in at the time of the original 1980 judgment and gave all the rights of production on the leases to defendant.

In 1997, one day before the aforementioned decision in *Klockenkemper* was filed, plaintiff filed a complaint against defendant claiming that the oil and gas lease had terminated by its own terms due to the nonproduction of oil and gas from 1987 to the date of the complaint. The complaint requested that the oil and gas lease be terminated, that defendant be compelled to execute a release of the lease, and that the court declare that defendant abandoned all of the oil and gas equipment that was remaining on plaintiff's property. Plaintiff also requested costs and reasonable attorney fees.

Although defendant admitted that there had been no production from defendant's oil and gas lease since 1987, defendant alleged an affirmative defense and prayed for a dismissal of the complaint. In defendant's affirmative defense, he alleged that the Twenhafels executed an oil and gas lease dated July 29, 1954, to Denzil U. Webster and A. M. Perrine, as lessees. Defendant alleged that the Twenhafel's daughter, Ruth Ann Maschhoff, and her husband, Donald Maschhoff, executed another oil and gas lease dated May 11, 1977, to defendant. Defendant stated that in 1987, a lawsuit was pending (No. 77—L—24) in the circuit court of Clinton County regarding whether the 1954 Twenhafel lease or the 1977 Twenhafel lease was the valid lease. De-

fendant claimed in his affirmative defense that the oil and gas lease could not terminate because of nonproduction "while the lessee is engaged in litigation with the lessor or his privies in title to establish the validity of the lessee's lease." Hence, defendant claimed that he was not required to produce oil and gas under the May 11, 1977, lease while he was engaged in litigation since 1987 with the Twenhafels or their privies in title under the 1954 lease. Defendant requested that the circuit court enter judgment dismissing plaintiff's complaint.

Plaintiff's response to defendant's affirmative defense admitted most of the facts but denied that an oil and gas lease will not terminate because of nonproduction while the lessee is engaged in litigation with the lessor or his privies in title.

On December 17, 1998, defendant filed a motion for summary judgment. The circuit court determined that defendant's motion for summary judgment was "stricken," and the case proceeded to trial by the stipulation of the parties. The circuit court entered its order on February 11, 1999, and determined, after reviewing the record in No. 77—L—24, that defendant could have been using his leasehold since he was specifically awarded that right. The circuit court then stated that defendant had abandoned his leasehold due to nonproduction. More specifically, the circuit court entered judgment as follows:

"1. That the defendant execute a release of the oil and gas lease within 30 days[ ] and record the same.

2. That judgment be entered in favor of the plaintiff for reasonable attorney fees in the amount of $3,275.

3. That defendant remove from said leasehold off of his property within 30 days. Any property remaining upon said leasehold after 30 days will be deemed to be abandoned ***."

On March 12, 1999, defendant filed a motion to reconsider. The circuit court denied this motion on March 19, 1999. Defendant filed a timely notice of appeal.

On appeal, defendant claims that the circuit court erred in determining that his leasehold was terminated for nonproduction. Specifically, defendant claims that an oil and gas lease will not terminate due to nonproduction while the lessee is engaged in litigation with the lessor or his privies in title to establish the validity of the lessee's lease. Hence, defendant contends that his right to operate the lease does not require operation during the pending litigation. We disagree.

■ This case was submitted to the circuit court on the admissions in the pleadings and the affidavits submitted by each party. The parties agreed on the facts. This court may determine the correctness of a ruling on a question of law independent of the circuit court's judg-

ment. *In re Marriage of Avery*, 251 Ill. App. 3d 648, 652, 622 N.E.2d 1231, 1234 (1993).

Defendant relies heavily on *Brookens v. Peabody Coal Co.*, 11 Ill. 2d 322, 143 N.E.2d 25 (1957), and *Greer v. Carter Oil Co.*, 373 Ill. 168, 25 N.E.2d 805 (1940), to support his argument that he was not required to operate the lease during the pendency of the aforementioned litigation. These cases are not persuasive, however, because they are both distinguishable from the instant case.

In *Greer*, the lessor, Shaw, made a quitclaim deed to Greer in 1933, subject to a life estate in the land. In 1936, Shaw executed an oil and gas lease with Carter Oil Company (Carter), and it was recorded. Greer's deed was not recorded until July of 1938. There was no indication that Greer claimed any rights prior to July of 1938. By that time, two years of the lease had elapsed, and Carter had drilled an oil well. The lease, by its own terms, was to expire on May 28, 1939. In October of 1938, Greer and others brought suit to cancel the oil and gas lease. The circuit court, in relevant part, determined that since the three-year term of the oil lease expired during the time period that litigation was pending, the court provided additional time for Carter to drill another well. The appellants appealed directly to the Illinois Supreme Court, because a freehold was involved. The Illinois Supreme Court agreed with the circuit court's decision. The Illinois Supreme Court stated that if Carter had produced a well during the remaining seven months of the lease, it would be liable to account for the oil produced as though it was a trespasser. Additionally, if Carter brought in a dry hole, it might be liable for damages for destroying the market value of the leasehold. The court noted that Shaw caused the problem but that it could have been avoided if the appellants had placed their deeds of record and given notice to the world of their rights. The court was faced with the decision as to whether the principle of estoppel applied to give Carter a reasonable additional time beyond the term of the lease in which to exercise its right to drill. The court stated that Carter had recorded its lease more than two years before the appellants' deeds were placed on record. The court noted that the appellants had notice during this entire time that there was an outstanding title created by their grantor and that suit was not begun until insufficient time was remaining to have the litigation terminated prior to the expiration date of the Carter lease. Due to the aforementioned facts, the *Greer* court determined that the extension of the lease was justified. *Greer*, 373 Ill. at 178, 25 N.E.2d at 810.

The case at bar is distinguishable from the *Greer* decision for many reasons. In the instant case, the litigation that was pending when defendant ceased operations was between two different lessees.

In *Greer*, the litigation that was pending was between the lessor and the lessee.

In the case at hand, defendant was aware that the 1954 lease existed, because it was recorded. In fact, defendant consulted with attorneys before he entered into the lease with the Twenhafels and the Maschhoffs since he knew about the 1954 lease. In *Greer*, the landowner (Shaw) caused the problem by giving a quitclaim deed to Greer that was not recorded until after an oil well was already drilled. The lessee had no knowledge that Greer had an interest in the property until two years of the lease had passed.

Another distinguishing characteristic about the *Greer* decision is the fact that, in *Greer*, the lease was for a three-year term. During the three-year term, litigation ensued and the lease expired while litigation was pending. In the instant case, the lease was for "as long thereafter as oil *** [is] produced from the real property." Defendant produced oil from the property from 1977 through 1987 while defendant's litigation with Fisher was pending. Although there is no dispute that the circuit court gave defendant permission to operate the oil wells from 1987 through 1997 when the complaint in the instant case was filed, he failed to do so. Since defendant had permission to produce oil, he could not have been considered a trespasser. Hence, we do not find the *Greer* case to be persuasive based upon the set of facts in the instant case.

In *Brookens*, the parties executed an oil and gas lease for a 90-day term. On the same day, the parties entered into a supplemental agreement that stated, in relevant part, as follows: "That in the case of said litigation or claim by said claimants it is agreed by the parties to said lease—that the said ninety[-]day period named in said lease shall be extended until said litigation is fully settled and the rights of the parties with relations thereto are fully determined and settled." *Brookens*, 11 Ill. 2d at 324, 143 N.E.2d at 27. The appellants interviewed officers of Peabody Coal Company and discovered that said company claimed ownership of the oil and gas underlying the appellees' land. The parties attempted to negotiate the ownership question and were unsuccessful. Within the 90-day term, the appellants joined landowners from the area from whom they had acquired oil and gas leases and filed suit to remove Peabody Coal Company's claim against the land of all the parties as a cloud upon their title and to restrain it from interfering with oil and gas development. The sole question in *Brookens* was whether the adverse claim and action taken by the appellants had the effect of keeping the lease in force and extending the time within which a well could be commenced. The *Brookens* court stated, *"The answer lies in the oil-and-gas lease and supplemental*

*agreement."* (Emphasis added.) *Brookens*, 11 Ill. 2d at 325, 143 N.E.2d at 27.

Hence, it is clear that the *Brookens* decision is specific to the agreement between the parties in the *Brookens* case, and its decision was dependent upon the supplemental agreement. That agreement provided that, in the event of litigation, the leasehold would be extended until the rights of the parties were litigated or settled. The *Brookens* court also stated that the lessee under an oil and gas lease should do what a prudent operator, using reasonable diligence, would do, having in mind the best interest of the lessor and lessee. "A prudent operator could not be expected to hazard large amounts for *drilling* in the face of an asserted adverse claim to his leasehold title." (Emphasis added.) *Brookens*, 11 Ill. 2d at 326, 143 N.E.2d at 28.

■ In the instant case, the parties did not make a side agreement similar to the one in the *Brookens* decision. Since defendant was aware of the 1954 Twenhafel lease, he could have included a supplemental agreement similar to the one in the *Brookens* case. He failed to do so. Additionally, the *Brookens* decision focused on the fact that an operator should not be expected to expend huge amounts of money to actually *drill* another well in the face of an asserted adverse claim to his leasehold title. In the instant case, defendant was not required to *drill* another well pursuant to the lease. He was merely required to continue producing oil, and he failed to do so from 1987 to 1997. Hence, *Brookens* is also distinguishable from the instant case.

Since we find neither *Greer* nor *Brookens* to be persuasive based upon our set of facts, we find that defendant has failed to show, as a matter of law, that his lease was improperly terminated for nonproduction. Pursuant to the lease, defendant failed to perform his obligations. The fact that defendant was also engaged in litigation with Fisher is of no consequence. In 1980, defendant was granted all the rights of production. In 1980, this order was vacated when the circuit court realized that the case should not have proceeded as a class action with Fisher representing all other persons who might claim any interest under the original oil leases. In March of 1987, the circuit court reinstated the 1980 judgment against Fisher. This decision was affirmed on appeal in 1988. *Klockenkemper v. Fisher*, No. 5—87—0419 (August 10, 1988) (unpublished order pursuant to Supreme Court Rule 23 (134 Ill. 2d R. 23)). The cause of action between defendant and plaintiff was not filed until 1997. Since defendant has had the right to operate the lease since 1987 and because he has failed to do

so, we affirm the circuit court's order finding that defendant abandoned his leasehold due to nonproduction.

Affirmed.

KUEHN and HOPKINS, JJ., concur.